AMBULATORY CARE REVIEW SERVICES, A.K.A. ACRS, Inc., et al., Appellees,

v.

BLUE CROSS & BLUE SHIELD OF MINNESOTA et al., Appellants.

[Cite as *ACRS, Inc. v. Blue Cross & Blue Shield
of Minnesota* (1998), 131 Ohio App.3d 450.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

Nos. 73390, 73399 and 73410.

Decided Nov. 9, 1998.

*Baker & Hostetler, Karen B. Newborn, Jordan B. Berns* and *Jeffrey K. Rohrs,* for appellee, ACRS, Incorporated.

*Martindale, Brzytwa & Quick, Jonathan R. Cooper* and *James L. McCrystal; Oppenheimer, Poms & Smith* and *Mark Wine,* for appellants, Blue Cross & Blue Shield of Minnesota, Inc. et al.

*Rider, Bennett, Egan & Arundel, L.L.P., Richard J. Nygaard, Randall H. Lentz* and *Eric J. Magnuson; Thompson, Hine & Flory, Robert D. Monnin, Mark L. Rodio* and *Suzanne Bretz Blum,* for Pharmacy Gold.

*Buckingham, Doolittle & Burroughs* and *David D. Drechsler;* and *Michael J. Wagner,* for The Inteq Group.

*Mansour, Gavin, Gerlack, Manos, Jeffrey M. Embleton* and *David B. Cathcart,* for National Pharmacy Marketing & Wrights.

---

MICHAEL J. CORRIGAN, Judge.

Blue Cross and Blue Shield of Minnesota et al., defendants-appellants, appeal from the judgment of the Cuyahoga County Court of Common Pleas, Case No. CV–299322, in which the trial court denied defendants' motions to stay litigation and compel arbitration. Defendants assign one error for this court's review.

Defendants' appeal is not well taken.

On November 30, 1995, Ambulatory Care Review Services, Inc. ("ACRS"), and FFI Rx Managed Care ("FFI"), plaintiffs-appellees, filed suit against Blue Cross and Blue Shield of Minnesota, Inc. ("BCBSM"), Pharmacy Gold, Inc. ("PGI"), Debra Dullinger and William Jenison personally and in their corporate capacity at PGI, The Inteq Group, Inc. ("Inteq"), National Pharmacy Marketing Corporation ("NPMC"), and James and Richard Wright in their corporate capacity at NPMC, alleging fraud, negligent misrepresentation, and deceptive trade practices against all defendants; defamation against BCBSM and PGI; and promissory estoppel, breach of contract and a violation of Ohio's Pattern of Corrupt Activities Act as set forth in R.C. 2923.31 against BCBSM, PGI, Inteq and NPMC.

These claims arose out of the administration of a pharmaceutical rebate program designated as R.Ph.'s Choice. The program allegedly provided cash rebates to pharmacies from drug manufacturers for the sale of certain prescription drugs purchased by cash customers who were without insurance or other third-party payor coverage for prescription drugs. Plaintiffs maintain that this program differs from third-party payor pharmaceutical rebate programs where manufacturers provide rebates to pharmacies for prescription drugs purchased by customers who have prescription drug coverage through their medical insurance carrier.

Plaintiffs' complaint alleged that a contract had been executed whereby PGI was responsible for obtaining rebates from the manufacturer, a percentage of which were to be paid to pharmacies whose cash customers participated in R.Ph.'s Choice. The rebates in question were to be obtained through master contracts that PGI had already entered into with various prescription drug manufacturers. Inteq contracted with PGI whereby PGI agreed to provide a list of prescription drugs for which rebates were being offered. Essentially, under their agreement, Inteq was a claims processor for PGI. Inteq, in turn, entered into a contract with NPMC whereby NPMC agreed to market and administer R.Ph.'s Choice. Plaintiffs were retained by NPMC to market R.Ph.'s Choice to retail chain pharmacies. Plaintiffs maintained that they were not financially compensated as called for under the terms of the contract. Plaintiffs maintained further that defendants-appellants materially misrepresented both the scope of the program and the actual amount of the rebates offered.

Initially, PGI, NPMC and James and Richard Wright filed answers and counterclaims against the plaintiffs. The answers asserted a number of affirmative defenses including one alleging that the underlying case must be sent to arbitration pursuant to the terms of the various contracts between the parties. The remaining defendants; BCBSM, Inteq, William Jenison, and Debra Dullinger filed motions to dismiss the action on March 29, 1996 for lack of personal jurisdiction. Extensive motion practice and discovery followed. On October 2, 1996, the trial court overruled defendants' motions to dismiss the action on jurisdictional grounds.

On September 24, 1996, the plaintiffs filed their first amended complaint. The defendants who had not yet answered filed their respective answers and counterclaims in a timely manner. All defendants asserted a number of affirmative defenses in their respective answers including the enforcement of written arbitration clauses contained within the underlying contracts.[1]

---

1. BCBSM set forth its affirmative defense in the following manner; "Plaintiffs' claims for breach of contract and all related claims are barred by the terms of Plaintiffs' contract with NPMC."

On April 11, 1997, the trial court established a briefing schedule for motions to compel arbitration. On May 13, 1997, PGI, William Jenison, and Debra Dullinger moved to stay the litigation and compel arbitration pursuant to the terms of the underlying contract and R.C. 2711.02. All remaining defendants joined in the motion to stay litigation and compel arbitration pursuant to R.C. 2711.02. The motion was fully briefed by the parties. On September 24, 1997, the trial court denied defendants' motion to stay litigation and compel arbitration.

PGI, William Jenison, and Debra Dullinger filed their timely notice of appeal on October 23, 1997. Inteq filed its timely notice of appeal on October 24, 1997. BCBSM filed its timely notice of appeal on October 27, 1997. On November 24, 1997, this court consolidated all three cases for purposes of appeal.

Defendants' sole assignment of error on appeal states:

"The trial court erred in refusing to compel arbitration and stay litigation in this case since the parties' agreements all required arbitration of this dispute."

Defendants argue, through their sole assignment of error, that the trial court erred in failing to grant their motion to stay litigation and compel arbitration of the underlying dispute pursuant to R.C. 2711.02 and the arbitration clauses contained in the underlying contracts between the parties. It is defendants' position that Ohio law requires the enforcement of arbitration clauses. Defendants maintain that they specifically raised arbitration as an affirmative defense in their answers, pursuant to R.C. 2711.02, and therefore did not waive the contractual right to arbitration, nor did they cause an unnecessary delay in the proceedings, by failing to file their respective motions to compel arbitration until eighteen months after the filing of the original complaint. Defendants argue that any delay was precipitated by jurisdictional issues that had to be determined prior to any further rulings on substantive issues by the trial court. Defendants maintain further that the contract between NPMC and ACRS contained an arbitration clause that is binding upon all claims brought under this action by both ACRS as well as FFI, particularly in light of the chain of contracts between the respective parties involved.[2] It is defendants' position that plaintiffs admitted this fact in their brief in opposition to defendants' motion to dismiss for lack of personal jurisdiction and are therefore bound by their prior admission.

Plaintiffs argue that defendants effectively waived their right to arbitrate the underlying disputes through an unnecessary delay in filing the motion to stay litigation and compel arbitration. Even if the defendants did not waive their right to arbitrate, it is the plaintiffs' position that the contract that forms the

---

2. Defendants maintain that FFI is, in reality, a subcontractor for ACRS as both entities are wholly owned subsidiaries of a parent company known as First Florida International Holdings, Inc. Therefore the terms of the ACRS–NPMC contract should apply to FFI as well.

basis for their complaint is based solely upon the pharmaceutical rebate program designated as R.Ph.'s Choice, a cash rebate program, which was not covered by any written arbitration clause. Accordingly, the defendants cannot rely upon a "chain of contracts" dealing with other pharmaceutical rebate programs to compel arbitration in this specific matter. Plaintiffs contend further that an initial review of the record demonstrates that the defendants failed to present admissible evidence in support of the motion to stay, in that only unauthenticated copies of contracts containing the alleged arbitration agreements were attached as exhibits. Plaintiffs argue that these documents do not constitute sufficient evidence of the existence of a contract to compel arbitration of the disputes at issue. Lastly, plaintiffs maintain that FFI cannot be compelled to arbitrate any claims against the defendants because it never entered into written agreement with any of the defendants in this case.

R.C. 2711.02 provides that the trial court may stay an action and refer it to arbitration once the court has been "satisfied that the issue involved in the action is referable to arbitration under an agreement in writing for arbitration." In applying this statute, appellate courts have indicated that the determination as to whether an issue can be referred to arbitration turns upon the specific language in the written arbitration provision. *Painesville Twp. Local School Dist. v. Natl. Energy Mgt. Inst.* (Aug. 23, 1996), Lake App. No. 96–L–128, unreported; *Cirino v. Christian & Timbers, Inc.* (1996), 116 Ohio App.3d 818, 689 N.E.2d 583.

It is well established that a written arbitration clause in a contract providing for dispute resolution should not be denied effect unless the clause in question is not susceptible to an interpretation that covers the subject matter of the underlying dispute. A strong presumption exists in favor of the validity of a written arbitration clause. *St. Vincent Charity Hosp. v. URS Consultants, Inc.* (1996), 111 Ohio App.3d 791, 677 N.E.2d 381, quoting *Didado v. Lamson & Sessions Co.* (1992), 81 Ohio App.3d 302, 304, 610 N.E.2d 1085, 1086–1087. This holding is predicated upon public policy favoring the resolution of disputes by arbitration. *Windham Foods, Inc. v. Fleming Cos., Inc.* (May 2, 1997), Trumbull App. No. 96–T–5515, unreported, 1997 WL 269387.

However, as a general rule, a party to an action cannot be ordered to submit a claim to arbitration if that party has not agreed to arbitrate the dispute in writing. *AT&T Technologies, Inc. v. Communications Workers of Am.* (1986), 475 U.S. 643, 648, 106 S.Ct. 1415, 1418, 89 L.Ed.2d 648, 655. The issue of "whether a controversy is arbitrable under the provisions of a contract, is a question for the court to decide upon examination of the contract." *Sexton v. Kidder Peabody & Co., Inc.* (Mar. 7, 1996), Cuyahoga App. No. 69093, unreport-

ed, 1996 WL 100855, citing *Divine Constr. Co. v. Ohio–Am. Water Co.* (1991), 75 Ohio App.3d 311, 599 N.E.2d 388. A court will enforce an arbitration clause unless it is firmly convinced that the clause is inapplicable to the underlying dispute or issue in question. *Sexton, supra,* citing *Ervin v. Am. Funding Corp.* (1993), 89 Ohio App.3d 519, 625 N.E.2d 635.

As with all other contractual rights, the right to arbitrate is subject to waiver. See R.C. 2711.02 and 2711.03. See, also, *Rock v. Merrill Lynch, Pierce, Fenner & Smith, Inc.* (1992), 79 Ohio App.3d 126, 606 N.E.2d 1054; *Std. Roofing Co. v. John G. Johnson & Sons Constr. Co.* (1977), 54 Ohio App.2d 153, 8 O.O.3d 281, 376 N.E.2d 610. Waiver typically requires knowledge of the right to arbitrate and actions inconsistent with that right that usually involve delay and prejudice to the adverse party. *Jones v. Honchell* (1984), 14 Ohio App.3d 120, 122, 14 OBR 135, 137–138, 470 N.E.2d 219, 221–222; *Phillips v. Lee Homes, Inc.* (Feb. 17, 1994), Cuyahoga App. No. 64353, unreported, 1994 WL 50696. A court may also examine the motives of the party that has allegedly waived its right to arbitrate. *Manos v. Vizar* (July 9, 1997), Medina App. No. 96 CA 2581–M, unreported, 1997 WL 416402. Therefore, the question of waiver is usually a fact-driven issue and an appellate court will not reverse a finding of waiver absent a showing of an abuse of discretion. *Phillips, supra;* R.C. 2711.03. An abuse of discretion connotes more than an error in law or judgment but implies that the trial court's attitude was unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 482–483, 450 N.E.2d 1140, 1141–1142.

In the case *sub judice,* a review of the record demonstrates that the trial court properly overruled defendants motion to stay litigation and compel arbitration. Initially, it must be noted that defendants did not waive their right to request arbitration of the underlying dispute. Although a significant amount of time passed between the filing of the original complaint and the filing of the motions to compel arbitration, that delay was necessitated by jurisdictional questions that had to be determined prior to any subsequent rulings on other issues. If the trial court determined that it did not possess the requisite jurisdiction over the case, any additional rulings would have been without effect. Clearly, the delay in question was warranted by the facts of this case and defendants cannot be said to have waived their right to request arbitration of the underlying dispute. *Mills v. Jaguar–Cleveland Motors, Inc.* (1980), 69 Ohio App.2d 111, 23 O.O.3d 142, 430 N.E.2d 965. Contrary to plaintiffs' assertion, this matter is significantly different from this court's recent decision in *Stratton v. Odyssey Homes, Inc.* (Sept. 17, 1998), Cuyahoga App. No. 74068, unreported, 1998 WL 637446. In *Stratton,* the issue on appeal was whether the failure to file a motion to stay litigation and compel arbitration was rendered moot as a result

of the filing of a voluntary dismissal of the action followed by a subsequent re-filing of the complaint. Clearly, *Stratton* is inapplicable to the facts of the case at bar.

■ However, a further review of the record demonstrates that, although defendants did not waive their right to request arbitration in this matter, defendants failed to submit sufficient evidentiary material in support of their motion to stay litigation and compel arbitration. Plaintiffs' complaint specifically refers to an agreement to market R.Ph.'s Choice, a pharmaceutical cash rebate program. The complaint alleges further that this was an oral agreement between the parties. While defendants have attached excerpts of purported contracts between the relevant parties containing written arbitration agreements, these documents do not rise to the level of authenticated evidence necessary to compel arbitration. At the very least, defendants must produce authenticated copies of the entire contract upon which their motion to compel arbitration was based in order to provide the trial court with sufficient evidence of the existence of a written agreement to arbitrate the disputed claims. Without such evidence, the trial court is left with no alternative but to deny defendants' motions and proceed with litigation. See *Sexton* and *Divine Constr. Co., supra.*

In addition, the fact that ACRS and NPMC possibly entered into a written contract for marketing a different pharmaceutical rebate program than the one designated in the complaint does not lead one to conclude, as defendants maintain, that the agreement applies to the underlying disputes in the subject matter. Defendants failed to produce an authenticated copy of a written arbitration clause that was applicable to R.Ph.'s Choice, which is the subject of the plaintiffs' complaint. The possible existence of other contracts has no bearing on the arbitration of this dispute. A party cannot be forced to submit to arbitration a dispute that it has not agreed to submit. *AT&T Technologies, supra.*

■ Similarly, defendants failed to adequately substantiate their allegation through evidentiary material that FFI and ACRS were, for all practical purposes, the same entity. Without admissible evidence to the contrary, the trial court could not find that FFI, which did not enter into contract with any of the defendants, was bound by the terms of a written arbitration clause in a separate contract. *Harmon v. Philip Morris, Inc.* (1997), 120 Ohio App.3d 187, 697 N.E.2d 270; *Kline v. Oak Ridge Builders, Inc.* (1995), 102 Ohio App.3d 63, 656 N.E.2d 992.

Finally, defendants' contention that plaintiffs have admitted that their complaint was based upon a written agreement between ACRS and NPMC is unsupported by the trial court's record in this matter. Plaintiffs did not allege that their complaint was based upon any written agreement between the parties.

Rather, plaintiffs maintained that their complaint was based upon the oral agreement regarding the pharmaceutical cash rebate program designated as R.Ph.'s Choice, for which no written arbitration agreement was produced.

For the foregoing reasons, defendants' sole assignment of error is not well taken.

The judgment of the trial court is hereby affirmed.

*Judgment affirmed.*

ROCCO, P.J., and JAMES D. SWEENEY, J., concur.