I dissent from the majority. I would reverse the decision of Judge Christine McMonagle and remand for imposition of a stay pending arbitration of Martin Krist's dispute because the law unambiguously requires it.
Sometime between July and August 1994, Krist entered into a "Consulting Account Management Agreement" with "Mr. Richard W. Curtis, Intercon Financial Corp." through which Krist invested $100,000 in a private trading program purportedly involving pre-sold bank negotiable instruments from the "top one-hundred world banks."[1] The agreement was for a term of one year and to yield a profit of 40% per week. All disputes arising in connection with the agreement were to be settled under the rules of the American Arbitration Association in St. Louis, Missouri.
By August 23, 1994 Krist was advised his investment had earned almost $175,000 but, over the succeeding months and years, he received increasingly creative excuses and no profit or even return of his initial investment. On September 18, 1998, he brought suit against Curtis, Intercon and Randy P. Curtis, Curtis' son with whom he had some dealings. Curtis and his co-defendants answered with a general denial and among various affirmative defenses asserted the right to arbitrate under the terms of the agreement. When the judge denied the motion to stay proceedings pending arbitration, this appeal followed.
The majority opinion sidesteps the Ohio Supreme Court's most recent opinion on enforcement of arbitration clauses in ABM Farms,Inc. v. Woods (1998), 81 Ohio St.3d 498, 692 N.E.2d 574, which reaches several issues raised in this case and similar facts. It also evades this court's holdings in Krafcik v. USA EnergyConsultants, Inc. (1995), 107 Ohio App.3d 59, 667 N.E.2d 1027, which ARM Farms cited with approval. It is clear that in order to defeat an arbitration clause based upon a claim of fraudulent inducement, a party must show that the arbitration clause itself was fraudulently induced and not some other provision or the contract in general. ABM Farms, supra. The majority's opinion is the result of legerdermain raising the specters of fraud in the factum and a series of agreements out of thin air; neither claim ever existed, nor was either pleaded or briefed.
Krist argues that ABM Farms does not apply because he asserted a rescission claim and the dispute cannot be submitted to arbitration until it is first determined by trial whether the contract is valid and enforceable. His reliance upon Rolling v.Ohio State Home Services, Inc. (July 14, 1993), Medina App. No. 2157, unreported, is misplaced. Although a party may elect to rescind a fraudulently induced contract, it is irrelevant to the enforceability of the arbitration clause. In Beecher v. Ohio StateHome Services, Inc. (Dec. 10, 1997), Summit App. No. 18439, unreported, the Ninth District Court of Appeals expressly declined to overrule its earlier decision in Rolling and certified a conflict between its decision in Beecher and this court's decision in Krafcik, supra. The Ohio Supreme Court reversed Beecher and necessarily overruled Rolling as well. Beecher v. Ohio State HomeServices, Inc. (1998), 81 Ohio St.3d 599, 693 N.E.2d 212. The only relevant issue is whether the arbitration clause itself was fraudulently induced and even Krist makes no such claim. Thus, the majority was faced with the need to create the illusion of fraud in the factum.
An agreement obtained through fraud in the factum would void an arbitration clause because such an agreement is considered voidab initio and does not constitute any agreement whatsoever. The difference between fraud in the factum and fraud in the inducement is often poorly stated and frequently misconstrued. Haller v.Borror Corp. (1990), 50 Ohio St.3d 10, 13, 552 N.E.2d 207, 210, provides an example:
 A release is obtained by fraud in the factum where an intentional act or misrepresentation of one party precludes a meeting of the minds concerning the nature or character of the purported agreement. Thus, when the actions or representations of the release so impair the mind and judgment of the releasor that he fails to understand the nature or consequence of his release, there has been no meeting of the minds.
Ballentine's Law Dictionary provides a definition:
 fraud in the factum. Fraud exercised in reference to the manual acts of signing and delivering an instrument, sometimes by a substitution of the documents accomplished by deception.
The distinguishing factor of fraud in the factum is its direction toward the nature of the instrument; if a party signs a brokerage agreement under the impression that it is an insurance form or signs a release of liability under the belief it is a tolling agreement, it is fraud in the factum. It can only arise when a party is under the belief that a document he signed was something entirely different from what it turned out to be. However, fraud in the factum cannot be maintained when a complaining party had the opportunity to read and understand the document before signing. Haller, supra at 14, 552 N.E.2d at 210.
An agreement caused by fraud in the factum is void ab initio
because there "has been no meeting of the minds." This does not, however, mean that any failure in the "meeting of the minds" results in fraud in the factum because then there would be no difference between fraud in the factum and fraud in the inducement.
In fraud in the inducement there has been, in fact, a meeting of the minds and the defrauded party has made an agreement although it is based upon a misrepresentation. The party committing the fraud cannot void the agreement based upon his own misrepresentation and must honor the contract as though the misrepresentation was true or allow rescission at the defrauded party's option. In situations where the parties have not agreed to anything or one party is so misled that he might not understand that he is entering into any agreement, there is fraud in the factum.
Krist alleges in his complaint that Curtis falsely told him: (1) he and his corporation had operated investment programs under authority created for them by the Federal Reserve Bank; and (2) the investments in his programs were returning profits of 40% weekly. Krist alleges that based upon these misrepresentations he entered into the agreement with Curtis which contained the arbitration clause and gave Curtis a $100,000 investment. Krist never alleges or claims he was unaware that he was signing a "Consulting 
Account Management Agreement" or that he was unable to read or understand the agreement before signing; rather, he claims only that he was fraudulently induced into signing the agreement by the Curtis' misrepresentations on investment risks and profits.
Clearly Krist would not have entered into the agreement if he had known the representations were false and that reliance is an element of his fraudulent inducement claim. It does not follow, however, that there was no meeting of the minds. Krist agreed to invest money in exchange for the promise to return his original investment and a weekly 40% profit. Curtis agreed to provide a weekly 40% profit on Krist's investment and, after one year, return the investment and the profits. The only question was whether Curtis misrepresented his ability to perform his side of the bargain. This is fraud in the inducement.
In order to justify the denial of the motion to stay, the majority alludes to Krist's various claims derived from a series of "agreements" that do not contain the arbitration clause. However, the documents referred to are not agreements at all.
 A. "Sample Letter of Intent." The paper, dated March 25, 1994, is a form with blanks to be filled in, addressed to Richard Curtis and signed by Krist, expressing Krist's intention to invest $100,000 in the Accumulation Plan/250 Program. It is not an agreement but only a letter requesting Curtis to "prepare a customized agreement" for Krist's signature.
 B. "Attachment — Special Power of Attorney." The paper, another form with blanks, dated March 25, 1994, signed by Krist in the presence of a Notary Public, purports to give Curtis a power of attorney over Krist's investment.
 C. "Accumulation Plan/250." This paper is a form with the only blank being the rate of return. "35% to Martin Krist, 5% to Janet Eckert" is written in below "40% percent per week." It explains that minimum investment as being $250,000, that participants can commingle funds to achieve the $250,000 minimum, and identifies a procedure through which Intercon initially sends the prospective client a "Letter of Intent," "Specimen Contract" and "Limited Power of Attorney." The prospective participant first signs the letter of intent and power of attorney and returns them to Intercon. Intercon then prepares and sends a "customized contract" for the client's signature.
 D. "Agreement." This form has typed-in data and is dated June 24, 1994. It contains the signature of Janet Eckert and appears to state that $100,000 is invested for 40 weeks, that participant Martin Krist is entitled to 35% and "representative" Janet Eckert is entitled to 5%.
 E. "Account Statement — Martin Krist." A document on Intercon Financial Corp. Stationary dated August 23, 1995, bears the signature of Richard Curtis and purports to show the state of Krist's investment, $174,400 in profit, on that date.
These five documents do not represent a series of agreements but a series of documents leading to the single "Consulting 
Account Management Agreement." This is the only agreement/contract upon which Krist bases his complaint and this is the agreement he claims was fraudulently induced. It is the only document signed by two parties. It is also the agreement that contains an arbitration clause.
The majority's citation to ACRS, Inc. v. Blue Cross BlueShield of Minnesota (1998), 131 Ohio App.3d 450, 722 N.E.2d 1040, has no application to the instant case. In ACRS, the defendants claimed the existence of an agreement containing an arbitration clause but failed to provide an authenticated copy of the entire contract. This court could not order arbitration under that contract when it was not part of the record. That factual situation has nothing to do with the instant case. Krist's claims are based upon: but a single agreement containing the arbitration clause.
Perhaps recognizing the weakness of the majority opinion's reasoning, the concurring opinion seeks alternative justifications for the judgment in this case. These, unfortunately, are equally unconvincing.
The concurrence first states that the three defendants denied the existence of a contract in their joint answer, thus precluding their reliance on the arbitration clause. This is incorrect because they also asserted the arbitration clause in an agreement as an affirmative defense. A party is absolutely privileged to state claims in the alternative and "may also state as many separate claims or defenses as he has regardless of consistency and whether based on legal or equitable grounds." Civ.R. 8(E)(2). The defendants, therefore, had every right to deny the existence of the contract as one defense while claiming the protection of the arbitration clause within a contract as an alternative.
Furthermore, as Krist asserted that Randy Curtis was a party to the written agreement, but his name and signature are absent from the document, it is reasonable to deny such a contract's existence in a joint answer. Although specific answers pertaining to each defendant are preferable, Krist did not object to the form of the answer or request more specific responses pursuant to Civ.R. 8(B) or 10(B).
Because public policy favors enforcement of arbitration clauses, the burden of proof is on the party asserting waiver.Griffith v. Linton (1998), 130 Ohio App.3d 746, 751,721 N.E.2d 146, 149. The party asserting waiver must prove that the defendant was aware of the right to arbitrate, and that it acted inconsistently with that right. Id. (citing Phillips v. Lee Homes,Inc. (Feb. 17, 1994), Cuyahoga App. No. 64353, unreported. Whether a party acted inconsistently with the right to arbitrate is determined by the totality of the circumstances. Phillips, supra.
Nowhere has the majority or concurring opinion set forth any circumstances on which to base a waiver, other than the belated claim that the defendants denied the existence of a contract in addition to asserting the arbitration clause as an affirmative defense. The assertion of an affirmative defense followed by a timely motion to stay is sufficient to defeat a claim of waiver.Rock v. Merrill Lynch, Pierce, Fenner Smith, Inc. (1992),79 Ohio App.3d 126, 128-29, 606 N.E.2d 1054, 1055; Harsco Corp. v. CraneCarrier Co. (1997) , 122 Ohio App.3d 406, 415-16, 701 N.E.2d 1040,1046-47 (citing Phillips, supra).
The concurrence also claims that a stay pending arbitration would inappropriately require the trial judge to determine which defendants were parties to the agreement and entitled to take advantage of the arbitration clause. If it is inappropriate for a judge to determine who are the parties to a contract, a plaintiff would be able to defeat an arbitration provision by alleging the existence of phantom agreements and factual disputes concerning the parties thereto. Allowing such a result would eviscerate Krafcik's
holding that the joinder of additional parties to a lawsuit cannot preclude enforcement of an arbitration clause between parties to an agreement. Krafcik, 107 Ohio App.3d at 63-64, 667 N.E.2d at 1030.
I would, therefore, reverse, remand for a determination of which defendants are parties to the Consulting Accounting Management Agreement and stay the litigation pending outcome of the arbitration with respect to those parties.
[1] While March 25, 1994 is typed at the top of the agreement with Krist's signature, it is accepted and initialed by Curtis on July 19, 1994 and initialed by Krist on August 1, 1994. Krist claimed, however, the $100,000 was invested on March 25, 1994.