[Cite as *Hedeen v. Autos Direct Online, Inc.*, 2014-Ohio-4200.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**No. 100582**

---

## TAMARA HEDEEN

PLAINTIFF-APPELLANT

vs.

## AUTOS DIRECT ONLINE, INC.

DEFENDANT-APPELLEE

---

**JUDGMENT:**
AFFIRMED IN PART; REVERSED IN PART
AND REMANDED

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-13-799060

**BEFORE:** Kilbane, J., Boyle, A.J., and Jones, J.

**RELEASED AND JOURNALIZED:** September 25, 2014

**ATTORNEYS FOR APPELLANT**

Ronald L. Burdge
Elizabeth A. Wells
Burdge Law Office
2299 Miamisburg-Centerville Road
Dayton, Ohio 45459-3817

**ATTORNEY FOR APPELLEE**

David A. Corrado
Law Offices of David A. Corrado
Skylight Office Tower
1660 West 2nd Street, Suite 410
Cleveland, Ohio 44113-1454

MARY EILEEN KILBANE, J.:

**{¶1}** Plaintiff-appellant, Tamara Hedeen ("Hedeen"), appeals from the trial court's decision granting the motion to stay proceedings pending arbitration filed by defendant-appellee, Autos Direct Online, Inc. ("ADO"). For the reasons set forth below, we affirm in part, reverse in part, and remand.

**{¶2}** In January 2013, Hedeen filed a complaint against ADO alleging causes of action for breach of contract, violations of the Motor Vehicle Sales Rule and the Ohio Consumer Sales Practices Act, and fraud and deceit. In her complaint, Hedeen alleges that on November 13, 2012, she purchased a used 2011 Mercedes-Benz online from ADO for $28,000. She alleges that prior to purchasing the vehicle, her ADO salesman, Dan Caldwell ("Caldwell"), represented to her that the vehicle had not been in an accident, and that the vehicle came with the remainder of the manufacturer's warranty. After purchasing the online vehicle, Hedeen discovered that the 2011 Mercedes-Benz was in an accident, where it sustained substantial damage.[1]

**{¶3}** Pursuant to a stipulated leave to plead, ADO answered Hedeen's complaint in March 2013. In its answer, ADO raised the affirmative defense that Hedeen's claims were subject to the arbitration agreement in the purchase agreement. ADO moved to stay the proceedings pending arbitration in June 2013. ADO attached a copy of the arbitration agreement, which states that: "[b]y agreeing to arbitrate, you and we give up

---

[1]In the affidavit Hedeen attached to her brief in opposition to ADO's motion to stay proceedings, she states that the vehicle sustained over $20,000 in damage and over $7,000 of the damage had never been repaired.

some rights including the right to go to court and the right to a jury trial." The agreement is dated November 12, 2012, and has signatures for Hedeen and Caldwell. ADO also attached an "Acknowledgment Concerning Vehicle's History," which indicates that Hedeen initialed the following four paragraphs stating:

a.) I have had an adequate and full opportunity to inspect the vehicle myself, and to have a third party or mechanic of my choice make the inspection for me.

b.) I have had an adequate and full opportunity to request from [ADO] and other sources all information about the vehicle's history, and all other information that I need to determine whether I wish to purchase the vehicle.

c.) [ADO] and others from whom I have requested information, have furnished all information that I requested to my satisfaction, and I have reviewed and considered such information.

d.) No one from [ADO] has made any oral representations, warranties, or statements to me that the vehicle has never been in an accident, or that the vehicle has never experienced any prior damage.

**{¶4}** In response, Heeden filed a brief in opposition, in which she argued that ADO waived its right to arbitrate; ADO failed to authenticate the documents attached to its motion to stay; the arbitration clause is unconscionable; the arbitration clause is illusory; and the arbitration clause is contrary to public policy. In October 2013, the trial court granted ADO's motion to stay proceedings pending arbitration.

**{¶5}** It is from this judgment that Hedeen appeals, raising the following single assignment of error for review.

<u>Assignment of Error</u>

The trial court abused its discretion when it granted [ADO's] motion to stay pending arbitration.

{¶6} In her sole assignment of error, Hedeen raises the following five issues: (1) whether ADO waived its right to arbitrate; (2) whether ADO failed to authenticate the documents attached to its motion to stay; (3) whether the arbitration clause is unconscionable; (4) whether the "loser pay" provision in the arbitration clause is illusory; and (5) whether the arbitration clause is contrary to public policy.

## Ohio Arbitration Act

{¶7} Ohio public policy favors enforcement of arbitration provisions. Arbitration is encouraged as a method of dispute resolution and a presumption favoring arbitration arises when the claim in dispute falls within the arbitration provision. *Williams v. Aetna Fin. Co.*, 83 Ohio St.3d 464, 471, 1998-Ohio-294, 700 N.E.2d 859. Ohio's policy of encouraging arbitration has been declared by the legislature through the Ohio Arbitration Act, R.C. Chapter 2711. *Goodwin v. Ganley, Inc.*, 8th Dist. Cuyahoga No. 89732, 2007-Ohio-6327, ¶ 8.

{¶8} R.C. 2711.01(A) provides that an arbitration agreement in a written contract "shall be valid, irrevocable, and enforceable, except upon grounds that exist in law or equity for the revocation of any contract." Ohio law directs trial courts to grant a stay of litigation in favor of arbitration pursuant to a written arbitration agreement on application of one of the parties, in accordance with R.C. 2711.02(B), which provides:

> If any action is brought upon any issue referable to arbitration under an agreement in writing for arbitration, the court in which the action is pending, upon being satisfied that the issue involved in the action is

referable to arbitration under an agreement in writing for arbitration, shall on application of one of the parties stay the trial of the action until the arbitration of the issue has been had in accordance with the agreement, provided the applicant for the stay is not in default in proceeding with arbitration.

## Standard of Review

{¶9} The appropriate standard of review depends on "the type of questions raised challenging the applicability of the arbitration provision." *McCaskey v. Sanford-Brown College*, 8th Dist. Cuyahoga No. 97261, 2012-Ohio-1543, ¶ 7. Generally, an abuse of discretion standard applies in circumstances, such as a determination that a party has waived its right to arbitrate a given dispute. *Id.*, citing *Milling Away, L.L.C. v. UGP Properties, L.L.C.*, 8th Dist. Cuyahoga No. 95751, 2011-Ohio-1103. However, the issue of whether a party has agreed to submit an issue to arbitration or questions of unconscionability are reviewed under a de novo standard of review. *Id.* at ¶ 7-8, citing *Shumaker v. Saks Inc.*, 163 Ohio App.3d 173, 2005-Ohio-4391, 837 N.E.2d 393 (8th Dist.) and *Taylor Bldg. Corp. Of Am. v. Benfield*, 117 Ohio St.3d 352, 2008-Ohio-938, 884 N.E.2d 12. Under a de novo standard of review, we give no deference to a trial court's decision. *Brownlee v. Cleveland Clinic Found.*, 8th Dist. Cuyahoga No. 97707, 2012-Ohio-2212, ¶ 9, citing *Akron v. Frazier*, 142 Ohio App.3d 718, 721, 756 N.E.2d 1258 (9th Dist.2001).

{¶10} In the instant case, Hedeen raises questions challenging waiver, *whether she agreed to arbitration*, and the unconscionability of the arbitration agreement. Therefore,

we review the waiver issue for an abuse of discretion and the unconscionability issue de novo standard of review.

## Waiver of Right to Arbitrate

{¶11} Hedeen first argues that ADO waived its right to arbitrate because it participated in discovery and pretrial hearings and waited five months to file its motion to stay.

{¶12} We note that to prove the defending party waived its right to arbitration, the complainant is required to demonstrate that the defending party knew of an existing right to arbitration and acted inconsistently with that right to arbitrate. *Phillips v. Lee Homes, Inc.*, 8th Dist. Cuyahoga No. 64353, 1994 Ohio App. LEXIS 596, *8 (Feb. 17, 1994). "The essential question is whether, based on the totality of the circumstances, the party seeking arbitration has acted inconsistently with the right to arbitrate." *Id.*

{¶13} In *Phillips*, this court has set forth a list of factors to consider whether a party has acted inconsistently with the right to arbitrate: (1) any delay in the requesting party's demand to arbitrate via a motion to stay the judicial proceeding and an order compelling arbitration; (2) the extent of the requesting party's participation in the litigation prior to its filing a motion to stay the judicial proceeding, including a determination of the status of discovery, dispositive motions, and the trial date; (3) whether the requesting party invoked the jurisdiction of the court by filing a counterclaim or third-party complaint without asking for a stay of the proceedings; and (4) whether the

nonrequesting party has been prejudiced by the requesting party's inconsistent acts. *Id.* at *12.

{¶14} In the instant case, a review of the record reveals that ADO answered Hedeen's complaint on March 19, 2013, after Hedeen stipulated to ADO's leave to plead. In its answer, ADO asserted the affirmative defense of its right to arbitration under the agreement. Although ADO appeared for a pretrial on April 24, 2013, appeared for a telephone status conference on May 2, 2013, and responded to Hedeen's request for admissions on May 13, 2013, it moved to stay the proceedings pending arbitration on June 10, 2013 — only two-and-a-half months after it answered Hedeen's complaint. Based on the totality of these circumstances, the trial court did not abuse its discretion in finding that ADO did not waive its right to arbitrate. Therefore, Hedeen's first issue lacks merit.

### Authenticated Evidentiary Material

{¶15} In her second issue, Hedeen, relying on *McGuinea v. Ganley Nissan, Inc.*, 8th Dist. Cuyahoga No. 86050, 2005-Ohio-6239, argues that ADO's motion to stay pending arbitration should have been denied because ADO failed to attach any authenticated evidentiary material in support of its motion. We find *McGuinea* to be distinguishable from the instant case.

{¶16} In *McGuinea*, this court upheld a trial court's decision denying the defendant's motion to stay the proceedings pending arbitration because the defendant failed to submit a properly authenticated copy of the contract and arbitration clause with

its motion to stay. *Id.* at ¶ 15. The plaintiff bought a vehicle from the defendant that began to malfunction soon after plaintiff purchased the vehicle. *Id.* at ¶ 2. The plaintiff then filed a complaint against the defendant. *Id.* at ¶ 3. The defendant filed a motion to stay the proceedings, which plaintiff opposed. *Id.* at ¶ 4. The trial court denied defendant's motion to stay for failure to authenticate exhibit No. 1 ("exhibit") attached to the motion. *Id.*

{¶17} In the affidavit attached to plaintiff's brief in opposition to defendant's motion to stay, plaintiff verified that she signed an agreement and that the agreement was entitled "Motor Vehicle Purchase Contract." The plaintiff did not state, however, that the exhibit attached to defendant's motion to stay was a copy of the exact form that she signed. Instead, in order to authenticate the exhibit, defendant needed to present an affidavit that verified that the exhibit was in fact the exact contract agreed upon by the parties. *Id.* at ¶ 22. This court found that the trial court was left with no choice but to deny defendant's motion to stay the proceedings because defendant failed to produce an authenticated copy of the contract upon which their motion was based. *Id.* at ¶ 15.

{¶18} As stated above, R.C. 2711.02(B) provides:

> If any action is brought upon any issue referable to arbitration under an agreement in writing for arbitration, the court in which the action is pending, upon being satisfied that the issue involved in the action is referable to arbitration under an agreement in writing for arbitration, shall on application of one of the parties stay the trial of the action until the arbitration of the issue has been had in accordance with the agreement, provided the applicant for the stay is not in default in proceeding with arbitration.

This statute requires a trial court, "upon being satisfied that the issue involved in the action is referable to arbitration under an agreement in writing for arbitration," to stay the proceedings pending arbitration. *Id.*

{¶19} In *McGuinea*, the trial court was not convinced that the issue involved in that case was referable to arbitration. On appeal, this court upheld the trial court's decision to deny defendant's motion to stay for failure to authenticate. This court affirmed the trial court's evidentiary decision, noting that under Evid.R. 104, "a trial court has the sole discretion to determine the admissibility of evidence." *McGuinea* at ¶ 13.

{¶20} In reaching this decision in *McGuinea*, this court relied on another Eighth District decision, *ARCS, Inc. v. Blue Cross & Blue Shield of MN*, 131 Ohio App.3d 450, 722 N.E.2d 1040 (8th Dist.1998). *McGuinea* at ¶ 14. In *ARCS*, like *McGuinea*, this court upheld the trial court's decision to deny the defendants' motion to stay pending arbitration because the defendants failed to include an authenticated copy of the contract with the motion to stay. *Id.* at 458. The complaint in *ARCS* specifically referenced an agreement. *Id.* at 457. The complaint further alleged that the agreement was an oral agreement between the parties. *Id.* *ARCS* held that

> while defendants-appellants have attached excerpts of purported contracts between the relevant parties containing the written arbitration agreements, these documents do not rise to the level of authenticated evidence necessary to compel arbitration. At the very least, defendants-appellants must produce authenticated copies of the entire contract upon which their motion to compel arbitration was based in order to provide the trial court with sufficient evidence of the existence of a written agreement to arbitrate the disputed claims. Without such evidence, the trial court was left with no alternative but to deny defendants-appellants' motion and proceed with litigation.

*Id.*

{¶21}   The *ARCS* case involved several parties on each side, as well as a complicated factual history.   In affirming the trial court's decision, this court noted that the plaintiffs alleged that they had entered into an oral agreement with the defendants, which did not contain an arbitration agreement.   Based on those facts, the trial court's decision was upheld because this court agreed that the defendants did not establish that plaintiffs had agreed to arbitrate the matter at all.   *Id.* at 457-458.   Therefore, *ARCS* is also not applicable to the facts in the instant case.

{¶22} Moreover, in Hedeen's opposition brief to ADO's motion to stay, she basically admits that she signed the arbitration agreement attached to ADO's motion to stay.   She asserts that when she received the purchase contract from ADO via email, she "later found out that there was an arbitration clause in the stack of documents that [ADO] salesman Dan Caldwell emailed to her."   She asserts several issues with receiving the arbitration agreement, including her arguments that she was never told anything about arbitration "before or when she signed the sales documents that [Caldwell] emailed [her]," and that she was never given a copy of the arbitration rules.   She further asserts that "if she had known about the arbitration clause and what it meant, she would not have purchased the vehicle."   However, Hedeen never stated the signature on the arbitration agreement was not hers.   Additionally, she never asserted that she did not sign the arbitration agreement, nor did she raise any issues with the trial court regarding the authenticity of the arbitration agreement attached to ADO's motion to stay.

**{¶23}** In the affidavit Hedeen attached to her opposition brief, she also admits that she received the arbitration agreement, in a "stack of documents" that Caldwell emailed to her. She stated that when she signed all of these "sales documents," no one told her that by signing them, she was agreeing that arbitration would be final and binding; no one told her that by signing them, she was "waiving her constitutional right to a jury trial"; no one told her that by signing, she could not bring claims against ADO in court; and no one explained to her that she had to resolve disputes through arbitration. However, she does not state in her affidavit that she did not sign the arbitration agreement or claim that the signature was not hers.

**{¶24}** Based on the facts of the instant case, we find no abuse of discretion. The record establishes that Hedeen never denied that she signed the arbitration agreement. In accepting the documents, the trial court, in its discretion, considered these facts as well. Therefore, we find that the trial court did not abuse its discretion in accepting the unauthenticated documents attached to ADO's motion to stay. Accordingly, Hedeen's second argument lacks merit.

Unconscionability

**{¶25}** In her third issue, Hedeen argues the arbitration agreement is procedurally and substantively unconscionable. Hedeen contends that after she discovered that the vehicle had been damaged in an accident, she found out that there was an arbitration clause in the stack of documents that ADO emailed to her. She further contends that her ADO salesperson never mentioned the arbitration agreement to her or explained it to her.

She claims that she did not realize that she was giving up her rights to a jury trial. She further claims that had she known about the arbitration clause and what it meant, she would not have purchased the vehicle.

{¶26} We note that an arbitration provision may be held unenforceable on grounds that exist at law or in equity for the revocation of any contract. *Hayes v. Oakridge Home*, 122 Ohio St.3d 63, 2009-Ohio-2054, 908 N.E.2d 408, ¶ 15. Unconscionability is such a reason. *Id.* at ¶ 19.

{¶27} In *Taylor*, 117 Ohio St.3d 352, 2008-Ohio-938, 884 N.E.2d 12, ¶ 33, the Ohio Supreme Court explained:

> Unconscionability includes both "'an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party.'" *Lake Ridge Academy v. Carney*, 66 Ohio St.3d 376, 383, 613 N.E.2d 183 (1993), quoting *Williams v. Walker-Thomas Furniture Co.* (D.C.Cir.1965), 350 F.2d 445, 449; *see also Collins v. Click Camera & Video, Inc.*, 86 Ohio App.3d 826, 834, 621 N.E.2d 1294 (1993). The party asserting unconscionability of a contract bears the burden of proving that the agreement is both procedurally and substantively unconscionable. *See generally Ball v. Ohio State Home Servs., Inc.*, 168 Ohio App.3d 622, 2006-Ohio-4464, 861 N.E.2d 553, ¶ 6; *see also Click Camera*, 86 Ohio App.3d at 834, 621 N.E.2d 1294, citing White & Summers, Uniform Commercial Code (1988) 219, Section 4-7 ("One must allege and prove a 'quantum' of both prongs in order to establish that a particular contract is unconscionable").

{¶28} Procedural unconscionability involves the circumstances surrounding the execution of the contract between the two parties and occurs where no voluntary meeting of the minds was possible. *Id.* In determining procedural unconscionability, a court should consider factors bearing on the relative bargaining position of the contracting parties — including age, education, intelligence, business acumen, experience in similar

transactions, whether the terms were explained to the weaker party, and who drafted the contract. *McCaskey,* 8th Dist. Cuyahoga No. 97261, 2012-Ohio-1543, ¶ 24, quoting *Taylor* at ¶ 44.

{¶29} Additionally, the court should consider whether the party who claims that the terms of a contract are unconscionable was represented by counsel at the time the contract was executed. *Eagle v. Fred Martin Motor Co.,* 157 Ohio App.3d 150, 2004-Ohio-829, 809 N.E.2d 1161, ¶ 31 (9th Dist.)*,* citing *Bushman v. MFC Drilling, Inc.*, 9th Dist. Medina No. 2403-M, 1995 Ohio App. LEXIS 3061 (July 19, 1995). "The crucial question is whether 'each party to the contract, considering his obvious education or lack of it, [had] a reasonable opportunity to understand the terms of the contract, or were the important terms hidden in a maze of fine print * * *?'" *Lake Ridge Academy*, 66 Ohio St.3d 376, 383, 613 N.E.2d 183, quoting *Walker-Thomas Furniture Co.* at 449. *See also Blackburn v. Ronald Kluchin Architects, Inc*., 8th Dist. Cuyahoga No. 89203, 2007-Ohio-6647, ¶ 29.

{¶30} Substantive unconscionability goes to the specific terms of the contract. *McCaskey* at ¶ 30. When considering substantive unconscionability, the court should observe whether the terms of the contract are commercially reasonable. *Id.*, *see also Eagle* at ¶ 31. We note that no generally accepted list of factors has been developed for this category of unconscionability because the determination of commercial reasonableness varies with the content of the contract terms at issue in any given case. "However, courts examining whether a particular * * * clause is substantively

unconscionable have considered the following factors: the fairness of the terms, the charge for the service rendered, the standard in the industry, and the ability to accurately predict the extent of future liability." *Click Camera,* 86 Ohio App.3d at 834, 621 N.E.2d 1294.

{¶31} With respect to procedural unconscionability, Hedeen asserts the following arguments: (1) the ADO salesperson had "far superior business experience" in selling cars than she did in buying cars; (2) she had no bargaining power in negotiating the arbitration agreement, which she claims was an "adhesion contract" or "form agreement"; (3) ADO drafted the agreement; (4) the ADO salesperson never explained the arbitration agreement to her, or even mentioned it; (5) it was not possible to alter the preprinted form arbitration clause; and (6) the circumstances under which the agreement was consummated are questionable. Hedeen also argues that the arbitration agreement is "written in extremely small font," which she claims makes it substantively unconscionable, but we will consider that issue within her procedural unconscionability arguments.

{¶32} In the instant case, the arbitration agreement is set forth on a single, full page. The agreement was not hidden in the middle of other provisions or in the middle of a five-page contract. While it appears to be in a smaller font than a 12-point font, it is not in fine print. Hedeen signed the arbitration agreement at the bottom of the page. At the top of the page, in all capital letters and in bold print, it states: "AGREEMENT TO

ARBITRATE." At the end of the agreement, near the bottom of the page just above

Hedeen's signature, it states:

> BY SIGNING BELOW, THE PARTIES ACKNOWLEDGE THAT THEY HAVE READ THIS ARBITRATION AGREEMENT. THE PARTIES UNDERSTAND AND AGREE THAT THEY ARE GIVING UP THE RIGHT TO SEEK REMEDY IN A COURT OF LAW, INCLUDING FORGOING THE RIGHT TO A JURY TRIAL, AND THEY UNDERSTAND THAT THE RIGHTS TO APPEAL OR CHANGE AN ARBITRATION AWARD IN COURT ARE SIGNIFICANTLY LIMITED.

**{¶33}** There is no evidence in the record that Hedeen, who is a second-grade teacher, was prevented from reading the contract before signing or that she was incapable of understanding the document based on some mental or physical impairment. Further, Caldwell emailed all of the purchase documents to her. As a result, there was no salesperson standing over her, directing her to quickly sign the documents. Hedeen had time to read the documents she was signing. "If a person can read and is not prevented from reading what he signs, he alone is responsible for reading what he signs." *Haller v. Borror Corp.*, 50 Ohio St.3d 10, 14, 552 N.E.2d 207 (1990).

**{¶34}** Hedeen further argues that Caldwell did not explain the arbitration agreement to her. However, the law does not require him to do so. *ABM Farms v. Woods*, 81 Ohio St.3d 498, 692 N.E.2d 574. In *ABM Farms*, the defendant argued that the terms of the arbitration agreement were not explained to her. The Supreme Court explained:

> At the center of [the defendant's] allegation of fraudulent inducement is the naked truth that she did not read the contract. It drives a stake into the heart of her claim. "A person of ordinary mind cannot be heard to say that he was misled into signing a paper which was different from what he

intended, when he could have known the truth by merely looking when he signed." *McAdams v. McAdams*, 80 Ohio St. 232, 240-241, 88 N.E. 542, 544 (1909). *See, also, Upton v. Tribilcock*, 91 U.S. 45, 50, 23 L.Ed. 203, 205 (1875) ("It will not do for a man to enter into a contract, and, when called upon to respond to its obligations, to say that he did not read it when he signed it, or did not know what it contained. If this were permitted, contracts would not be worth the paper on which they are written"). The legal and common-sensical axiom that one must read what one signs survives this case. To find for [the defendant] would destroy that standard.

*Id.* at 503.

**{¶35}** Hedeen further asserts that the contract is procedurally unconscionable because it was drafted by ADO and she was not able to negotiate the terms of it. We note that a contract of adhesion is one in a standardized form that is prepared by one party and offered to the weaker party, usually a consumer, who has no realistic choice as to the contract terms. *Taylor,* 117 Ohio St.3d 352, 2008-Ohio-938, 884 N.E.2d 12, ¶ 49. "To be sure, an arbitration clause in a consumer contract with some characteristics of an adhesion contract 'necessarily engenders more reservations than an arbitration clause in a different setting,' such as a collective bargaining agreement or a commercial contract between two businesses." *Id*. at ¶ 49, quoting *Aetna Fin. Co.*, 83 Ohio St.3d 464, 472, 700 N.E.2d 859 (1998). However, adhesion contracts are not unconscionable per se in all instances. *Id.* "Indeed, so-called 'form contracts' can provide advantages to consumers. 'Forms reduce transactions costs and benefit consumers because, in competition, reductions in the cost of doing business show up as lower prices[.]'" *Id.*, quoting *Carbajal v. H & R Block Tax Servs., Inc.,* 372 F.3d 903, 906 (7th Cir.2004).

{¶36} Here, Hedeen contends she "was given the impression" that if she wanted to purchase the vehicle, she had to sign all of the documents that were emailed to her "without making any changes." However, there is no evidence that she attempted to negotiate or alter any of the terms of the agreement.

{¶37} Based on foregoing, we find that she has not met her burden of establishing that the arbitration agreement was procedurally unconscionable. The facts of the instant case demonstrate that Hedeen, a second-grade teacher, had reasonable opportunity to understand the terms of the contract, including the arbitration clause, which was not hidden in a maze of fine print. *See Lake Ridge Academy*, 66 Ohio St.3d at 383, 613 N.E.2d 183, quoting *Walker-Thomas Furniture Co.*, 350 F.2d 445, 449 (D.C.Cir.1965).

{¶38} Having found that the arbitration agreement is not procedurally unconscionable, we need not address Hedeen's substantive unconscionability arguments as both procedural and substantive unconscionability need to be present before this court would find the arbitration agreement to be unenforceable.

{¶39} Therefore, Hedeen's third issue is without merit.

<u>Loser-Pays Provision</u>

{¶40} In the fourth issue, Hedeen argues the trial court abused its discretion by granting ADO's motion to stay because the arbitration clause includes a "loser-pays" provision, which is contrary to Ohio law. The provision provides in pertinent part: "The non-prevailing party shall pay, and the arbitrators shall award the prevailing party's

arbitration costs and expenses, including reasonable attorney's fees." Hedeen claims that this provision makes the arbitration agreement unenforceable for two reasons: (1) it makes the agreement illusory because it "rewrites R.C. 1345.09(F) to impose significant and substantial risk on any consumer"; and (2) it violates public policy because it attempts to modify Ohio law, specifically R.C. 1345.09(F). That section states:

> The court may award to the prevailing party a reasonable attorney's fee limited to the work reasonably performed and limited pursuant to section 1345.092 of the Revised Code, if either of the following apply:
>
> (1) The consumer complaining of the act or practice that violated this chapter has brought or maintained an action that is groundless, and the consumer filed or maintained the action in bad faith;
>
> (2) The supplier has knowingly committed an act or practice that violates this chapter.

{¶41} Under R.C. 1345.09(F), when the consumer is the prevailing party, he or she may obtain an award of reasonable attorney fees when the defendant supplier knowingly violated the Consumer Sales Practices Act ("CSPA"). When the defendant-supplier is the prevailing party, however, it may obtain an award of reasonable attorney fees only when the consumer brought an action "that [was] groundless" *and* "filed or maintained [the action] in bad faith."

{¶42} Hedeen first claims that the loser-pay provision renders the arbitration agreement illusory because it gives ADO the unlimited right to violate Ohio law without risk of any liability whatsoever. We disagree. The agreement provides that if Hedeen prevails, then ADO must pay not only all of the costs of arbitration, but Hedeen's attorney

fees as well. Therefore, the loser-pays provision does not render the arbitration agreement illusory.

**{¶43}** Hedeen next argues that the loser-pay provision violates public policy because it effectively nullifies the protections afforded to a consumer under the CSPA. She claims this is so because the loser-pay provision would require a consumer who loses his or her case to pay a defendant-supplier's attorney fees even if the consumer does not file the action in bad faith. She asserts that this will deter consumers from arbitrating their claims.

**{¶44}** A court may refuse to enforce a contract when it violates public policy. *Marsh v. Lampert*, 129 Ohio App.3d 685, 687, 718 N.E.2d 997 (12th Dist.1998), citing *Garretson v. S.D. Myers, Inc.*, 72 Ohio App.3d 785, 788, 596 N.E.2d 512 (9th Dist.1991). The court in *Eagle*, 157 Ohio App.3d 150, 2004-Ohio-829, 809 N.E.2d 1161, explained:

> A refusal to enforce a contract on the grounds of public policy may be distinguished from a finding of unconscionability. Rather than focus on the relationship between the parties and the effect of the agreement upon them, public policy analysis requires the court to consider the impact of such arrangements upon society as a whole.

*Id.* at ¶ 63.

**{¶45}** Moreover, a contract injurious to the interests of the state will not be enforced. *King v. King*, 63 Ohio St. 363, 372, 59 N.E. 111 (1900). 17 Ohio Jurisprudence 3d, Contracts, Section 94, at 528 (1980), states:

> Public policy is the community common sense and common conscience, extended and applied throughout the state to matters of public morals, health, safety, welfare, and the like. Again, public policy is that principle of law which holds that no one can lawfully do that which has a tendency to

be injurious to the public or against the public good. Accordingly, contracts which bring about results which the law seeks to prevent are unenforceable as against public policy. Moreover, actual injury is never required to be shown; it is the tendency to the prejudice of the public's good which vitiates contractual relations. (Footnotes omitted.)

{¶46} The Ohio CSPA, as set forth in R.C. Chapter 1345, does not expressly preclude arbitration clauses in consumer sales contracts. *Vincent v. Neyer*, *d.b.a. Arthur Murray Franchised Dance Studio*, 139 Ohio App.3d 848, 852, 745 N.E.2d 1127 (10th Dist.2000); *Garcia v. Wayne Homes, L.L.C.*, 2d Dist. Clark No. 2001 CA 53, 2002-Ohio-1884, ¶ 76 (stating generally that statutory claims may be arbitrated). "The fact that R.C. 1345.04 confers jurisdiction upon common pleas and municipal courts in cases arising under the CSPA does not preclude arbitration of such claims." *Vincent* at 852, citing *Stehli v. Action Custom Homes, Inc.*, 11th Dist. Geauga No. 98-G-2189, 1999 Ohio App. LEXIS 4464 (Sept. 24, 1999). Further, arbitrating a CSPA claim does not deprive the claimant of any remedies prescribed by R.C. Chapter 1345. *See Smith v. Ohio State Home Servs., Inc.*, 9th Dist. Summit Nos. 16441 and 16445, 1994 Ohio App. LEXIS 2270 (May 25, 1994); *Karamol v. Continental Estates, Inc.*, 6th Dist. Wood No. WD-00-021, 2000 Ohio App. LEXIS 4264 (Sept. 22, 2000). The United States Supreme Court has noted, however, that statutory claims may be arbitrated so long as the claimant may "effectively vindicate his or her statutory cause of action" through arbitration. *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 28, 114 L.Ed.2d 26, 111 S.Ct. 1647 (1991). It is important to safeguard the statute's remedial and deterrent functions in the arbitration context. *Id.*

{¶47} But where a consumer's CSPA claim is subject to binding arbitration, limitations on a consumer's rights should not be allowed by a private arbitration forum. *Eagle*, 157 Ohio App.3d 150, 2004-Ohio-829, 809 N.E.2d 1161, at ¶ 67. Indeed, "[w]hen an arbitration clause vanquishes the remedial purpose of a statute by limiting consumers rights and preventing actions from being brought by consumers, the arbitration clause should be held unenforceable." *Id.* at ¶ 68, citing *Randolph v. Green Tree Fin. Corp.*, 178 F.3d 1149, 1156 (11th Cir.1999), citing *Gilmer*, 500 U.S. 20, 114 L.Ed.2d 26, 111 S.Ct. 1647.

{¶48} In the instant case, we find that the loser-pays provision in the arbitration agreement violates public policy to the extent that it requires the arbitrator to award ADO reasonable attorney fees even if Hedeen did not file her action in bad faith. The CSPA reflects a strong public policy that consumers who bring good faith claims against suppliers will not have to pay the supplier's attorney fees under R.C. 1345.09(F), even if the consumer loses his or claim against the supplier. ADO's loser-pays provision effectively nullifies this statutory protection provided to consumers by the CSPA. Therefore, we agree with Hedeen in that the loser-pay provision chills consumers from pursuing their statutory claims through arbitration.

{¶49} Based on the foregoing, we find that the arbitration clause is unenforceable because it vanquishes the remedial purpose of a statute by imposing arbitration costs and preventing actions from being brought by consumers. *See Eagle* at ¶ 68. Such a contract clause is injurious to the interests of the State, is against public

policy, and accordingly cannot, and will not, be enforced. *Id.* at ¶ 74, citing *King,* 63 Ohio St. 363, 372, 59 N.E. 111. As a result, the trial court's grant of ADO's motion to stay proceedings pending arbitration was improper.

{¶50} Accordingly, we find merit to Hedeen's fourth issue in part with respect to the loser-pays provision being against public policy.

Final and Binding Provision

{¶51} In her final issue, Hedeen argues that the "final and binding" provision is against public policy and misrepresents Ohio law. The arbitration agreement contains a provision, which states that: "The decision of the arbitrators shall be final and binding on all parties to the proceedings." Hedeen claims that this provision is unenforceable and against public policy because it attempts to modify Ohio law under both R.C. 2711.10 and 2711.11.

{¶52} R.C. 2711.13 provides that "[a]fter an award in an arbitration proceeding is made, any party to the arbitration may file a motion in the court of common pleas for an order vacating, modifying, or correcting the award as prescribed in sections 2711.10 and 2711.11 of the Revised Code." R.C. 2711.10 sets forth when a court may vacate an arbitration award. R.C. 2711.11 sets forth when a court may modify an award. Hedeen argues that the "final and binding" provision nullifies the protections under R.C. 2711.10 and 2711.11.

{¶53} In *Miller v. Gunkle*, 96 Ohio St.3d 359, 2002-Ohio-4932, 775 N.E.2d 475, the Ohio Supreme Court explained that "'[f]or a dispute resolution procedure to be

classified as 'arbitration,' the decision rendered must be final, binding and without any qualification or condition as to the finality of an award.'" *Id*. at ¶ 10, quoting *Schaefer v. Allstate Ins. Co.*, 63 Ohio St.3d 708, 711, 590 N.E.2d 1242 (1992). Therefore, the very definition of arbitration requires a "final and binding" award. The arbitration agreement does not modify R.C. 2711.10 or 2711.11. Accordingly, we find no merit to Hedeen's fifth and final argument.

{¶54} Hedeen's single assignment of error is sustained in part and overruled in part.

{¶55} Judgment is affirmed in part and reversed in part. The matter is remanded for adjudication of the claims.

It is ordered that appellant recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

---

MARY EILEEN KILBANE, JUDGE

LARRY A. JONES, SR., J., CONCURS;
MARY J. BOYLE, A.J., CONCURS IN PART AND DISSENTS IN PART (SEE SEPARATE OPINION).

MARY J. BOYLE, A.J., CONCURRING IN PART AND DISSENTING IN PART:

**{¶56}** I agree with the majority's analysis in most of the opinion, including its holding that the loser-pay provision violates public policy. I disagree, however, with the majority that the loser-pay provision invalidates the entire arbitration agreement. Thus, I respectfully concur in part and dissent in part.

**{¶57}** "If a contract or term in a contract is found to be unconscionable at the time that the contract was made, a court may choose to either refuse to enforce the contract, enforce the contract without the unconscionable portion, or limit the application of the unconscionable portion to avoid an unconscionable result." (Citations omitted.) *Eagle*, 157 Ohio App.3d 150, 2004-Ohio-829, 809 N.E.2d 1161, ¶ 36 (9th Dist.). Although we are addressing a public policy argument here, it is my view that this general statement of law applies.

**{¶58}** The arbitration agreement in this case provides that the arbitrators must "apply relevant law." Thus, by removing the portion of the contract that is against public policy — the loser-pays provision — the remaining contract is valid and enforceable. The arbitrators could then award the prevailing party any amount or remedy that is consistent with Ohio law.

**{¶59}** Accordingly, I concur in part and dissent in part.