**BECHTEL DO BRASIL CONSTRU-ÇÕES LTDA., Bechtel Canada Co., and Bechtel International, Inc., Plaintiffs–Counter–Defendants–Appellees,**

v.

**UEG ARAUCÁRIA LTDA., Defendant–Counter–Claimant–Appellant.**

Docket No. 10–0341–cv.

United States Court of Appeals, Second Circuit.

Argued: Nov. 29, 2010.

Decided: March 22, 2011.

Steven L. Smith (Marcus S. Quintanilla, on the brief), O'Melveny & Myers LLP, San Francisco, CA, for Plaintiffs–Counter–Defendants–Appellees.

Jeffrey S. Follett (Ronald E. Goodman, on the brief), Foley Hoag LLP, Washington, D.C., for Defendant–Counter–Claimant–Appellant.

Quinn Smith, Quinn International Legal Consultants, P.A., Miami, FL, for Associação Brasileira Dos Produtores Independentes De Energia Elétrica and Associação Brasileira De Geradoras Termelétricas, as amicus curiae.

Before: KATZMANN, SACK, and LYNCH, Circuit Judges.

GERARD E. LYNCH, Circuit Judge:

Plaintiffs Bechtel do Brasil, Bechtel Canada, and Bechtel International filed this action seeking to stay arbitration in connection with defendant UEG Araucária's claims of breach of contract, negligence and fraud. Plaintiffs contended that defendant's claims were barred by the applicable statute of limitations. Defendant responded that matters of timeliness were for the arbitrator to decide and that, in any event, its claims were timely. The United States District Court for the Southern District of New York (Barbara S. Jones, *Judge*) concluded that plaintiffs' statute of limitations claims were not governed by the parties' arbitration agreement, that the applicable limitations period had run, and that a permanent stay of arbitration was therefore warranted.

We hold that the district court erred in concluding that the parties' contracts left the power to determine the timeliness issue to the courts. Accordingly, we reverse the judgment of the district court and remand the case for proceedings consistent with this opinion.

## BACKGROUND

In 2000, UEG Araucária Ltda. ("UEGA"), a Brazilian entity, entered into

a series of contracts with Bechtel Do Brasil Construções Ltda., Bechtel Canada Co., and Bechtel International, Inc. (collectively, "Bechtel") for services associated with the construction of a power plant in Araucária, Brazil. The total agreement, worth approximately $210 million, required Bechtel to engineer and construct a 469–megawatt, gas-turbine generating station as well as to conduct the required performance testing, so that the facility would be ready for operation on the day that UEGA took delivery.

The agreement was memorialized in four documents—the "Site Construction Contract," the "Equipment Supply Contract," the "Services Contract," and the "Umbrella Agreement." Each of the three "contracts" contained an identical Arbitration provision.[1] That provision states:

*37.2 Arbitration*

Any dispute, controversy, or claim arising out of or relating to the Contract, or the breach, termination or validity thereof ... shall be finally settled by arbitration in accordance with the Rules of Conciliation and Arbitration of the International Chamber of Commerce (the "ICC") then in effect (the "Rules"), except as these rules my be modified herein....

*37.2.2*

Any arbitration proceeding or award rendered hereunder and the validity, effect and interpretation of this agreement to arbitrate shall be governed by the laws of the state of New York.

Each contract also included an identical "Law and Procedure" section, which provides, in relevant part:

*39.1.1 Governing Law*

The law which is to apply to the Contract and under which the Contract is to be construed is the law of the state of New York without regard to the jurisdiction's conflicts of laws rules....

*39.1.2 Procedural Law*

The law governing the procedure and administration of any arbitration instituted pursuant to Clause 37 is the law of the State of New York.

On September 16, 2002, Bechtel informed UEGA by letter that it had completed mechanical work on the plant and would begin the performance testing that was contractually required before formal delivery could occur. This testing began on September 18, 2002 and was completed on September 26, 2002. The next day, UEGA certified its acceptance of the plant.

For reasons unrelated to this lawsuit, UEGA did not begin operating the plant until December 2006, more than four years after it accepted delivery from Bechtel. Just over a year later, on January 13, 2008, the plant's steam-turbine generator failed. UEGA asserts that this failure was due to "deficiencies in the structural integrity of the lug welds" that Bechtel or its subcontractors should have discovered during the construction and testing of the plant in 2002.

On September 29, 2008, UEGA filed a Request for Arbitration before the International Chamber of Commerce ("ICC") claiming breach of contract, negligence, and fraud in connection with alleged defects in the steam plant. UEGA later amended this request to add a claim for negligent misrepresentation.

Bechtel responded by filing this action in the Supreme Court for the State of New York seeking a permanent stay of arbitration on the grounds that UEGA's claims were time-barred under both New York and Brazilian law. Notwithstanding the parties' agreement to arbitrate, Bechtel

---

**1.** The numbering of the relevant provisions is the same across contracts.

invoked the jurisdiction of the Supreme Court pursuant to section 7502(b) of the New York Civil Practice Law and Rules, which states:

> If, at the time that a demand for arbitration was made or notice of intention to arbitrate was served, the claim sought to be arbitrated would have been barred by limitation of time had it been asserted in a court of the state, a party may assert the limitation as a bar to the arbitration on an application to the court. . . .

On Bechtel's view, the statute of limitations governing UEGA's contract claims began to run from the date of mechanical completion. As such, even under the most generous of the potentially applicable limitations periods—six years for common law breach of contract in New York—the window for claims would have closed on September 16, 2008.

UEGA removed the case to federal district court and filed a counter-application to compel arbitration. Responding to Bechtel's assertion that any claims under the contract were time-barred, UEGA asserted that the relevant date from which to calculate the limitations period was September 27, 2002, the date upon which it formally accepted delivery of the facility. Because September 27, 2008 fell on a Saturday, UEGA's request for arbitration, filed on September 29, would therefore be timely under New York law. UEGA further argued that its claims were not time-barred, even if New York's borrowing statute would apply Brazil's three-year statute of limitations. *See* N.Y. C.P.L.R. 202 (limiting the limitations period for causes of action accruing outside of New York where the foreign jurisdiction imposes a shorter statute of limitations than the state does). Under UEGA's interpretation of Brazilian law, that country's limitations period began to run only upon discovery of the defects in the steam plant. UEGA had

therefore brought its claims with time to spare. Finally, UEGA maintained that any issue as to the timeliness of its claims was a matter for the arbitrator to decide.

In a written order granting a temporary stay of arbitration, the district court rejected UEGA's assertion that the issue of timeliness was reserved for the arbitrator. The court acknowledged that "[t]he federal policy in favor of arbitration requires that any doubts concerning the scope of arbitrable issues be resolved in favor of arbitration." *Bechtel Do Brasil Construções Ltda., et al. v. UEG Araucária Ltda.*, No. 09–cv–6417, at 3 (S.D.N.Y. Nov. 16, 2009). Nevertheless, it found that the language of the contract evidenced "the parties' clear intent to select New York law for arbitration procedure[,] . . . including the rule limiting the power of arbitrators to hear preliminary questions of timeliness." *Id.* at 7 (internal quotation marks omitted).

After hearing argument from the parties on the issue of timeliness, the district court issued a separate order granting a permanent stay of arbitration in favor of Bechtel. The court characterized the dispute with regard to New York law as "boil[ing] down to when Bechtel achieved the equivalent of 'substantial completion' " of the project, with Bechtel arguing that substantial completion occurred on the date of mechanical completion and UEGA urging that acceptance was the relevant triggering event. *Bechtel Do Brasil Construções Ltda., et al. v. UEG Araucária Ltda.*, No. 09–cv–6417, at 4 (S.D.N.Y. Dec. 4, 2009). The court then noted that "New York courts overwhelmingly support the principle that 'substantial completion' is the completion of 'actual physical work' on the project, even if incidental matters relating to the project remain open." *Id.* at 6. Because both parties agreed that the physical structure of the plant was completed on September 16, 2002—the date of mechanical completion—

the court determined that UEGA's arbitration claims were untimely under New York law. The court found it unnecessary to consider whether Brazilian law would have afforded a more generous statute of limitations because, under New York's borrowing statute, "the claim must be timely under New York law as a threshold issue before considering the law of the jurisdiction where the cause of action accrued." *Id.* at 9, citing *Stuart v. Am. Cyanamid Co.*, 158 F.3d 622, 627 (2d Cir.1998).

This appeal followed.

## DISCUSSION

■ The arbitrability of Bechtel's statute of limitations defense is a question of law that we review de novo. *See Bank Julius Baer & Co. v. Waxfield Ltd.*, 424 F.3d 278, 281 (2d Cir.2005). Although the question is a close one, we conclude that, under the parties' agreement, the timeliness of UEGA's claims is a question for the arbitrator.

■ "[T]he FAA's primary purpose [is to] ensur[e] that private agreements to arbitrate are enforced according to their terms." *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 479, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989). Our task in this appeal is thus to divine whether the parties intended at the time of contracting to have issues of timeliness determined by the arbitrator. In examining the parties' written agreements for evidence of such intent, we apply state-law principles of contract interpretation. *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995). In applying those principles, however, we are guided by the "federal substantive law of arbitrability" created by the Federal Arbitration Act. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). Thus, we must con-

strue the parties' intentions "generously" in favor of arbitrability. *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 626, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985). Moreover, any ambiguity in the contract must be resolved in favor of arbitration. *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24–25, 103 S.Ct. 927.

As is often the case, the contracts at issue here are not clear as to the scope of the parties' intention to arbitrate. The basic tension in the language is between: (1) the statement that "[a]ny dispute, controversy, or claim arising out of or relating to the Contract, or the breach, termination or validity thereof ... *shall be finally settled by arbitration* in accordance with the Rules of Conciliation and Arbitration of the International Chamber of Commerce ... except as these rules may be modified herein" (emphasis added), and (2) the statements that "the validity, effect, and interpretation of this agreement to arbitrate shall be governed by the laws of the State of New York," and "[t]he law governing the procedure and administration of any arbitration instituted pursuant to Clause 37 is the law of the State of New York."

The former provision tends to support the view that *any* disagreements about the contract—which would include disputes about whether a relevant statute of limitations bars arbitration, as well as disputes about who should decide the statute of limitations issues—shall be decided by arbitration. The latter provisions cut the other way, suggesting that, because, under New York law, a party can assert a statute of limitations in *court* as a bar to arbitration, *see* N.Y. C.P.L.R. 7502(b), a party is permitted to have a *court* decide timeliness issues. The provisions are thus in tension, because if the latter provisions permit a court to decide the timeliness of UEGA's

claims, then the timeliness dispute would not be "finally settled by arbitration," contrary to the former provision.

Bechtel argues that the apparent tension between these provisions is easily resolved. It notes that, while Article 37.2 provides that "any dispute" is to be arbitrated in accordance with ICC Rules, that provision also includes the limitation "except as these rules may be modified herein." Bechtel finds such a modification implicit in Articles 37.2.2 and 39.1.2. It suggests that, by adopting New York law as the procedural and substantive law governing arbitration proceedings, those provisions tacitly authorize it to invoke C.P.L.R. 7502(b) and present its timeliness defense to a court, notwithstanding the general arbitration provision. Nevertheless, our precedents, and a close reading of the provisions on which Bechtel relies, lead us to conclude that the provisions in question do not modify the parties' fundamental and broad commitment to arbitrate *any* dispute relating to their agreement.

We confronted an argument similar to Bechtel's in *PaineWebber Inc. v. Bybyk*, 81 F.3d 1193 (2d Cir.1996). In that case, the plaintiffs sought to invoke section 7502 to avoid a blanket arbitration provision similar to the one at issue here.[2] Importantly, the contract also contained a choice-of-law clause, which specified that "[t]his agreement and *its enforcement* shall be construed and governed by the laws of the State of New York." *Bybyk*, 81 F.3d at 1196 (emphasis added, internal quotation marks omitted). Because the parties framed the issue as a dispute over the power to decide arbitrability—i.e., whether the power to decide the scope of the arbitration clause rested with a court or the arbitrator—we applied a pro-court presumption. *See AT & T Tech., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986).[3] We noted that, in order to vary from this presumption, we were required to find "clear and unmistakable evidence from the arbitration agreement, as construed by relevant state law, that the parties intended that the question of arbitrability shall be decided by the arbitrator." *Bybyk*, 81 F.3d at 1198–99 (internal quotation marks omitted).

Despite this presumption, we found several provisions in the agreement that evinced the parties' intent to arbitrate *all* issues. We observed that the wording of the general arbitration clause was "inclusive, categorical, unconditional and unlimited," and that "[t]he words 'any and all' are elastic enough to encompass disputes over whether a claim is timely and whether a claim is within the scope of arbitration." *Id.* at 1199. We also noted that this grant of power to the arbitrators was "unqualified by any language carving out substantive eligibility issues (with or without specific reference to timeliness) for resolution

---

**2.** The arbitration clause at issue in *Bybyk* provided: "any and all controversies which may arise ... concerning any account, transaction, dispute or the construction, performance, or breach of this or any other agreement ... shall be determined by arbitration. Any arbitration ... shall be conducted before an arbitration panel convened by ... the National Association of Securities Dealers.... Such arbitration shall be governed by the rules of the organization convening the panel." 81 F.3d at 1196.

**3.** Importantly for this case, the presumption is reversed where the issue is not "*who* (primarily) should decide arbitrability," but rather "*whether* a particular merits-related dispute is arbitrable because it is within the scope of a valid arbitration agreement." *First Options*, 514 U.S. at 944–45, 115 S.Ct. 1920 (1995) (emphasis in the original, internal quotation marks omitted).

by the courts." *Id.* at 1199–1200. Although we declined to read a clause in which the parties acknowledged "waiving their right to seek remedies in court" as dispositive on the question, we noted that the broad phrasing of that provision was evidence that PaineWebber, which drafted the contract, did not intend to preserve its right to raise timeliness objections in court. *Id.* at 1200.

As Bechtel does here, PaineWebber argued that the parties' choice of New York law meant that the timeliness issue should be settled by the court. In support of this proposition, it pointed to *Smith Barney, Harris Upham & Co. v. Luckie,* 85 N.Y.2d 193, 202, 623 N.Y.S.2d 800, 647 N.E.2d 1308 (1995), in which the New York Court of Appeals, confronted with an arbitration clause purporting to cover "any controversy" in connection with the agreement, found that the parties' choice of New York law to govern both "the agreement and its enforcement" authorized a court action to stay arbitration under N.Y. C.P.L.R. 7502(b). We rejected PaineWebber's reliance on *Luckie* as "self-defeating," because *Luckie* had relied on the Seventh Circuit decision later overturned in *Mastrobuono v. Shearson Lehman Hutton, Inc.,* 514 U.S. 52, 115 S.Ct. 1212, 131 L.Ed.2d 76 (1995). *See Bybyk,* 81 F.3d at 1200. We found that *Mastrobuono* governed the contract at issue in *Bybyk,* because, under *Mastrobuono,* "a choice-of-law provision, when accompanied by an arbitration provision such as in the Agreement, 'encompasses substantive principles that New York courts would apply, *but not . . . special rules limiting the authority of the arbitrators.*' " *Id.,* quoting *Mastrobuono,* 514 U.S. at 64, 115 S.Ct. 1212 (emphasis in *Bybyk* ). We thus found that, despite a pro-court presumption, the contract as a whole provided "clear and unmistakable evidence" that the parties intended that the timeliness dispute be decided by arbitration.

■ Our holding in *Bybyk* compels us to conclude that the contracts in this case are at least ambiguous as to whether Bechtel and UEGA agreed to permit recourse to C.P.L.R. 7502(b). As in *Bybyk,* we are confronted with a broad arbitration clause, which requires that "*[a]ny* dispute, controversy, or claim arising out of or relating to the Contract" be settled by arbitration. In terms that recall the waiver of judicial remedies in *Bybyk,* Article 37.2.3 states, "the Contractor and the Owner hereby waive irrevocably any rights of application or appeal to the courts of Brazil or any other jurisdiction to the fullest extent permitted by law in connection with any questions of law arising in the course of the arbitration or with respect to any award made." And, while the contracts in this case expressly provide that New York law governs arbitration "procedure and administration," they make no mention of timeliness disputes or of any right of the parties to resort to the courts in any circumstances. We are therefore presented with no clear statement that a statute of limitations defense should be withheld from the arbitrator.[4]

---

4. Our opinion in *Bybyk* did not discuss in any detail the Supreme Court's holding in *Volt Information Sciences v. Board of Trustees,* 489 U.S. 468, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989). Nevertheless, as Bechtel does here, PaineWebber relied substantially on the case in its filings before the court, and Judge Van Graafeiland gave it pride of place in his dissent. *See Bybyk,* 81 F.3d at 1202–03 (Van Graafeiland, J., dissenting).

The primary question posed in *Volt* was whether, given the California Court of Appeal's conclusion that the contract at issue incorporated a state-law provision allowing a court to stay arbitration pending the resolution of related litigation, the FAA nevertheless preempted the state statute. The *Volt* majori-

Admittedly, there are potentially significant differences between the contracts in this case and the one at issue in *Bybyk*. The instant contracts state that any dispute shall be arbitrated in accordance with ICC rules *"as modified herein"* (emphasis added), and then state that New York law shall govern "the administration and procedure of any arbitration" and the arbitration agreement's interpretation and effect. There is thus a stronger argument than there was in *Bybyk* that Bechtel's application to the court was permitted under the contracts' incorporation of New York law in modification of the ICC rules. It is also true that Bechtel seeks to apply a state-law statute of limitations to bar arbitration, rather than the private arbitral rule that was at issue in *Bybyk*. It is easier to believe that the parties wanted courts to determine state law timeliness issues than it is to believe that they tasked courts with enforcing private rules.

We cannot say, however, that these variations transform contract language that, in *Bybyk*, "clearly and unmistakably" gave the timeliness issue to the arbitrator into

language that, in this case, unambiguously confides that decision to a court. The exceptions clause in Article 37.2 may be fairly read as permitting modification of the ICC rules only insofar as they govern the actual arbitration, as opposed to any preliminary proceedings. On this reading, New York law would be incorporated to govern the procedure of an arbitration *once it is commenced*—for example, by requiring the arbitrator to follow the state's six-year statute of limitations— while provisions permitting application to a court *prior* to the commencement of arbitration would not be considered modifications of the "rules" of the ICC.[5]

Even if we were to adopt the broad reading of the exceptions clause that Bechtel advances, it would not follow that the contracts' choice-of-law provisions *must* be understood to permit recourse to C.P.L.R. 7502(b). As the Supreme Court has recognized, general choice-of-law clauses, such as those in Articles 37.2.2 and 39.1.2 of the instant contracts, may be read to address only "substantive rights and obligations, and not the State's allocation of power

ty concluded that no preemption had occurred, and that holding is not implicated here.

Although the Court also considered and rejected a claim by the appellants that federal arbitration law precluded the Court of Appeal's interpretation of the contract, we disagree with Bechtel that that aspect of the Supreme Court's decision controls the outcome of this case. Not only did *Bybyk* implicitly reject the argument from *Volt* that Bechtel makes here, but *Volt* is distinguishable on its facts, since the Court's holding rests on the interaction between the FAA and a particular provision of California law that is not implicated in this case. Moreover, the force of *Volt*'s contract-interpretation holding has been significantly weakened in the wake of *Mastrobuono,* in which the Supreme Court gave a more robust account of the role of federal arbitration law in guiding contract interpretation and noted that any inconsistency with *Volt* was due in part to the fact that the earlier case had arisen through the state

court system. 514 U.S. at 60 n. 4, 115 S.Ct. 1212. Because, in the present case, we review a federal court's interpretation of the contracts, *Mastrobuono* is the more apt precedent.

**5.** In *Shaw Group Inc. v. Triplefine International Corp.*, 322 F.3d 115, 122 (2d Cir.2003), we observed that an arbitration clause similar to Article 37.2 evinced the parties' intent to submit questions of arbitrability to an arbitrator. We noted in *Shaw* that article 6, section 2 of the ICC Rules ("ICC Rule 6.2") empowers the ICC's arbitral body "to address questions of arbitrability, either sua sponte before an answer is filed or at the specific request of any party." *Id.; see* ICC Rule 6.2. Bechtel acknowledges that "timeliness issues default to the arbitrator" pursuant to Article 37.2 and ICC Rule 6.2 in the absence of a contractual "modification of the ICC Rules." Pet'rs' Br. 30–31 n. 5.

between alternative tribunals." *Mastrobuono*, 514 U.S. at 60, 115 S.Ct. 1212. Nor does Article 39.1.2, which requires that New York law govern the "procedure and administration of any arbitration," necessarily compel the conclusion that the parties intended to permit timeliness issues to be presented in court. C.P.L.R. 7502(b) does not govern the procedure of the arbitration itself, but rather speaks to the circumstances in which parties may invoke the jurisdiction of the courts to circumvent the arbitral process. In short, while we think the modification language *could* be read to incorporate C.P.L.R. 7502(b), we are not convinced that it does so without doubt, particularly in light of our prior decision in *Bybyk*.

Bechtel suggests that the precedential force of *Bybyk* has been weakened in light of subsequent decisions by the New York Court of Appeals reiterating the rule that "[a] choice-of-law provision, which states that New York law shall govern both 'the agreement *and its enforcement,*' adopts as 'binding New York's rule that threshold Statute of Limitations questions are for the courts.'" *Diamond Waterproofing Sys. v. 55 Liberty Owners Corp.,* 4 N.Y.3d 247, 253, 793 N.Y.S.2d 831, 826 N.E.2d 802 (2005) (emphasis in original). Bechtel argues that because its contracts with UEGA specifically call for New York law to govern the *interpretation* and *effect* of the arbitration agreement, we should simply follow New York's rule in *Diamond Waterproofing,* even if we would reach a contrary result reasoning solely from the language of the contracts.

But the contracts at issue here do not, in fact, state that their "enforcement" shall be governed by New York law. While Bechtel may be correct that a New York court might find that the "effect" language in the contracts is synonymous with this "enforcement" language, the fact that the

parties did not use the particular "enforcement" language referenced in *Diamond Waterproofing* weakens Bechtel's argument that this language indicates the parties' clear intent to permit a court to decide timeliness issues pursuant to C.P.L.R. 7502(b).

More importantly, Bechtel's argument ignores the fact that our refusal to read the choice-of-law clause broadly in *Bybyk* was not based on our understanding of New York contract law, but rather on the requirements of federal arbitration law as articulated in *Mastrobuono.* That the New York Court of Appeals has subsequently read *Mastrobuono* more narrowly than we did in *Bybyk* does not relieve us of the obligation to follow our precedent.

In sum, our own reading of the language and our prior decision in *Bybyk* lead us to the conclusion that contracts between UEGA and Bechtel are ambiguous as to whether or not timeliness disputes can be decided by a court. As Bechtel conceded at oral argument, such ambiguities must be resolved in favor of arbitration. *See Moses H. Cone Mem'l Hosp.,* 460 U.S. at 24–25, 103 S.Ct. 927. We therefore conclude that the district court erred in holding that it, rather than the arbitrator, was authorized under the contract to decide the timeliness of UEGA's claims.

Because we have determined that the contracts reserved timeliness issues for the arbitrator, we need not address UEGA's objections to the district court's statute of limitations analysis.

## CONCLUSION

For the forgoing reasons, we REVERSE the judgment of the district court and REMAND the case for further proceedings consistent with this opinion.