[Cite as *Conte v. Blossom Homes, L.L.C.*, 2016-Ohio-7480.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 103751**

# RALPH CONTE, JR.

PLAINTIFF-APPELLEE

vs.

# BLOSSOM HOMES L.L.C., ET AL.

DEFENDANTS-APPELLANTS

## JUDGMENT:
REVERSED AND REMANDED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-15-848225

**BEFORE:** Laster Mays, J., Stewart, P.J., and S. Gallagher, J.

**RELEASED AND JOURNALIZED:** October 27, 2016

**ATTORNEYS FOR APPELLANTS**

Andrew M. Wargo
Marshall Dennehey Warner Coleman & Goggin
127 Public Square, Suite 3510
Cleveland, Ohio 44114

Douglas V. Bartman
Berns, Ockner & Greenberger, L.L.C.
3733 Park East Drive
Beachwood, Ohio 44122

**ATTORNEYS FOR APPELLEE**

Thomas L. Brunn
Alison D. Ramsey
Brunn Law Firm Co., L.P.A.
700 West Saint Clair Avenue
208 Hoyt Block Building
Cleveland, Ohio 44113

**FOR BELLMAN PLUMBING, INC.**

Todd M. Haemmerle
Gallagher Sharp
Bulkley Building, Sixth Floor
1501 Euclid Avenue
Cleveland, Ohio 44115

**FOR BRIDEN CONSTRUCTION, L.L.C.**

Jeffrey L. Tasse
Weston Hurd, L.L.P.
1301 East 9th Street, Suite 1900
Cleveland, Ohio 44114

**FOR JOSHUA MILLER**

Brian C. Lee
Reminger Co., L.P.A.
101 Prospect Avenue West, Suite 1400
Cleveland, Ohio 44115

**FOR DAVID MILLER**

James A. Desmith
Mark F. Fischer
Fischer, Evans & Robbins, Ltd.
3521 Whipple Avenue N.W.
Canton, Ohio 44718

ANITA LASTER MAYS, J.:

{¶1} Defendant-appellant Blossom Homes, L.L.C. ("Blossom") appeals the trial court's denial of its motion to stay the case against it pending arbitration. After a thorough review of the record, we reverse the trial court's order, finding that the arbitration provision is enforceable. However, we also find that the loser-pays provision is unconscionable, and is excised from the contract.

## I. BACKGROUND AND FACTS

{¶2} Plaintiff-appellee Ralph Conte, Jr. ("Conte"), and Blossom entered into a contract ("Contract") dated January 30, 2013, for remodeling and construction on Conte's home. The Contract consists of a preprinted form agreement entitled "Residential Purchase Agreement," and contains a scope of work described as the construction of a single -family dwelling residence, and incorporated additional listed documents. Consideration for the Contract is $175,658.00, subject to change order adjustments.

{¶3} A number of problems developed as work began and disputes arose between the parties regarding timely performance, deviation from the original plans, failure of the work to pass inspections, as well as structural and workmanship defects. Due to these issues, Conte withheld $9,750 from his final payment for the work.

Blossom filed a mechanic's lien for that amount on January 6, 2014, though no work was performed at the property after October 11, 2013.

{¶4} In January 2014, the original structural engineer, Brian Hengle ("Hengle"), inspected the work and discovered that Blossom had deviated from the original plans and specifications, causing structural defects. Hengle hired a framer to assess remedial options. Conte hired Isaac A. Lewin, P.E. ("Lewin"), an independent structural engineer to render an opinion. Lewin noted a number of significant issues. In order to permanently resolve those issues, the estimated cost would exceed $75,000.

{¶5} On July 14, 2015, Conte filed suit against Blossom, Anthony Kucia (a principal of Blossom), and several subcontractors for breach of contract, negligence, breach of warranty, fraudulent misrepresentation, Ohio Consumer Sales Practices Act ("OCSPA") violations, and negligence. As of the date the suit was filed, the work that Blossom performed had not been approved by the Village of Valley View's Building Commissioner.

{¶6} The first count of the complaint alleged that Blossom materially breached the contract by failing to properly construct and/or administer the project and additional expenses would be incurred to make the proper repairs. The second count alleged that Blossom negligently breached its implied warranty to perform the services in a workmanlike manner by failing to exercise ordinary care and skill in the construction and/or administration of the work. The third count against Blossom was for breach of express and/or implied warranties in contravention of R.C. 1302.26 and 1302.27 by using

defective and/or inferior materials. The fourth count alleged fraudulent misrepresentation and requested punitive damages. Two counts of the complaint alleged violations of the OCSPA, R.C. 1345.01 et seq. Conte also claimed fraudulent misrepresentation, negligence, to quiet title, and for slander of title as a result of the mechanic's lien.

{¶7} Blossom responded with a motion to stay pending arbitration based on Article XX of the Contract (the "Clause"). The Clause is entitled, "Notice of Builder's Right to Cure; Arbitration," and provides:

> OHIO LAW CONTAINS IMPORTANT REQUIREMENTS YOU MUST FOLLOW BEFORE YOU MAY COMMENCE ARBITRATION PROCEEDINGS FOR DEFECTIVE CONSTRUCTION AGAINST THE RESIDENTIAL PROCEEDINGS. YOU MUST PROVIDE THE CONTRACTOR WITH A WRITTEN NOTICE OF THE CONDITIONS YOU ALLEGE ARE DEFECTIVE UNDER CHAPTER 1312 OF THE OHIO REVISED CODE. THE CONTRACTOR HAS AN OPPORTUNITY TO OFFER TO REPAIR OR PAY FOR THE DEFECTS. YOU ARE NOT OBLIGATED TO ACCEPT ANY OFFER THE CONTRACTOR MAKES, THERE ARE STRICT DEADLINES AND PROCEDURES UNDER STATE LAW, AND FAILURE TO FOLLOW THEM MAY AFFECT YOUR ABILITY TO COMMENCE ARBITRATION PROCEEDINGS. YOU ARE EXPRESSLY ADVISED TO CONSULT THE OHIO REVISED CODE, SECTION 1312.01 ET SEQ., FOR THE LAW GOVERNING THIS RIGHT TO CURE.

> All claims or disputes arising out of this Agreement or the breach thereof, including claims for construction defects that are not resolved by the right to cure process set forth in the Ohio Revised Code 1312.01 et seq., shall be decided by a single arbitrator in an arbitration in accordance with the construction industry arbitration rules of the American Arbitration Association. This agreement to arbitrate shall be specifically enforceable in accordance with applicable law in any court having jurisdiction thereof. Notice of the demand for arbitration shall be filed in writing with the other party and with the American Arbitration Association and shall be made within a reasonable time after the dispute has arisen, except that ANY

CLAIM NOT SUBMITTED TO ARBITRATION BY FILING A DEMAND FOR ARBITRATION WITHIN ONE (1) YEAR AFTER THE CLAIM ACCRUES SHALL BE BARRED. The arbitrator's decision shall be final and binding upon the Purchaser and Builder and a judgment for the enforcement thereof may be entered by a court of competent jurisdiction.

(a)     The arbitrator will have no authority to award punitive or other damages unrelated to the prevailing party's actual damages (including incidental and consequential damages) and may not, in any event, make any ruling, finding or award that does not conform to the terms and conditions of the Residential Purchase Agreement and the other Contract Documents.

(b)     Neither a party nor an arbitrator may disclose the existence, content or results of any arbitration hereunder without the prior written consent of both parties except as may be required for the entry of a judgment.

(c)     Each party shall bear its own costs and expenses and an equal share of the arbitrator's and administrative fees of arbitration. Provided, however, that under Article XV, the arbitrator may award attorneys' fees to the prevailing party.

(d)     The arbitration process will otherwise comport with the statutory rules governing arbitration as contained within the Ohio Revised Code, and an arbitration decision shall be enforced as provided for within the statutory rules.

**{¶8}** Conte opposed the motion, observing that the font in Article XX was not bolded and was the same size font throughout the Contract. He also argued that there is no definition of "arbitration," and that the language does not advise that it is a waiver of the constitutional right to a trial by jury.

**{¶9}** In addition to the Clause, Article XIX of the Contract addresses limited warranties, assignment of warranties, limitation of damages and waiver of claims relating to emotional distress. The Contract states that an exemplar of the written warranty is to

be provided at the time the Contract is signed, and the actual warrant(ies) would be provided later. The section does not reference arbitration or Article XX. It does, however, contain an express limitation of damages and legal remedies, in regular font, within the paragraph.

{¶10} The trial court denied the motion to stay on October 27, 2015, finding that the agreement was substantively and procedurally unconscionable and contrary to public policy. The trial court did not issue findings of fact and conclusions of law, and there is no evidence in the record that such was requested. This appeal ensued.

## II. ASSIGNMENT OF ERROR

{¶11} Blossom presents a single assignment of error for review, arguing that the trial court erred in finding the arbitration clause of the Contract to be unconscionable and against public policy. We find that Blossom's position has merit.

## III. STANDARD OF REVIEW

{¶12} The issue of whether a party has agreed to submit a dispute to arbitration is reviewed under a de novo standard. *Hedeen v. Autos Direct Online, Inc.*, 2014-Ohio-4200, 19 N.E.3d 957, ¶ 9 (8th Dist.), citing *McCaskey v. Sanford-Brown College*, 8th Dist. Cuyahoga No. 97261, 2012-Ohio-1543, ¶ 7, and *Taylor Bldg. Corp. of Am. v. Benfield*, 117 Ohio St.3d 352, 2008-Ohio-938, 884 N.E.2d 12. We give no deference to a trial court's decision when reviewing an issue de novo. *Hedeen* at ¶ 9, citing *Brownlee v. Cleveland Clinic Found.*, 8th Dist. Cuyahoga No. 97707,

2012-Ohio-2212, ¶ 9.    *Akron v. Frazier*, 142 Ohio App.3d 718, 721, 756 N.E.2d 1258

(9th Dist.2001).

## IV.    LAW AND ANALYSIS

{¶13}    The public policy of Ohio favors enforcement of arbitration provisions:

> Arbitration is encouraged as a method of dispute resolution and a presumption favoring arbitration arises when the claim in dispute falls within the arbitration provision.    *Williams v. Aetna Fin. Co.*, 83 Ohio St.3d 464, 471, 700 N.E.2d 859 (1998).    Ohio's policy of encouraging arbitration has been declared by the legislature through the Ohio Arbitration Act, R.C. Chapter 2711.    *Goodwin v. Ganley, Inc.,* 8th Dist. Cuyahoga No. 89732, 2007-Ohio-6327, ¶ 8.

*Vasil v. Pulte Homes of Ohio, L.L.C.*, 8th Dist. Cuyahoga No. 102212, 2015-Ohio-2407, ¶ 10.    There is a presumption in favor of arbitration where the disputed issue falls within the scope of the arbitration agreement, "except upon grounds that exist at law or in equity for the revocation of any contract."    *Taylor Bldg.*    at ¶ 32, quoting R.C. 2711.01(A); *Williams v. Aetna Fin. Co.*, 83 Ohio St.3d 464, 471, 700 N.E.2d 859 (1998).

{¶14}    A party cannot be required to submit to arbitration any dispute that it has not agreed to submit because arbitration is a matter of contract.    *Taylor v. Ernst & Young, L.L.P.*, 130 Ohio St.3d 411, 2011-Ohio-5262, 958 N.E.2d 1203, ¶ 20, citing *AT&T Technologies, Inc. v. Communications Workers of Am.*, 475 U.S. 643, 648-649, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986).    *See also Academy of Med. v. Aetna Health, Inc.*, 108 Ohio St.3d 185, 2006-Ohio-657, 842 N.E.2d 488, ¶ 11-14 (in order for an arbitration agreement to be enforceable, the agreement must apply to the disputed issue), and *Ghanem v. Am. Greetings Corp.*, 8th Dist. Cuyahoga No. 82316, 2003-Ohio-5935, ¶ 12.

**{¶15}** The trial court determined that the Contract's arbitration clause was unconscionable and against public policy. We disagree.

**{¶16}** We have acknowledged on the issue of unconscionability that:

> When, however, an agreement is made under circumstances or terms that are so one-sided that the exchange of promises is involuntary, the law regards it as unfair or "unconscionable" to enforce the contract. The Supreme Court of the United States has defined an unconscionable agreement as one "such as no man in his senses and not under delusion would make on the one hand, and as no honest and fair man would accept on the other. *Thonen v. McNeil-Akron, Inc*., 661 F.Supp. 1252 (N.D. Ohio 1986), quoting *Hume v. United States*, 132 U.S. 406, 411, 10 S.Ct. 134, 33 L.Ed. 393 (1889)."

*Devito v. Autos Direct Online, Inc.*, 2015-Ohio-3336, 37 N.E.3d 194, ¶ 14 (8th Dist.).

**{¶17}** There are two facets to unconscionability, substantive and procedural. Procedural unconscionability involves the absence of meaningful choice on the part of one of the parties, or the indication that there was no meeting of the minds. *Taylor Bldg*., 117 Ohio St.3d 352, 2008-Ohio-938, 884 N.E.2d 12, at ¶ 34; *Hayes v. Oakridge Home*, 122 Ohio St.3d 63, 2009-Ohio-2054, 908 N.E.2d 408, ¶ 30. Indicators of procedural unconscionability include intelligence, age, education, whether the provisions were explained to the less sophisticated party and whether alternative sources existed for the goods or services in question. *Vasil,* 8th Dist. Cuyahoga No. 102212, 2015-Ohio-2407, ¶ 17, citing *Collins v. Click Camera & Video*, 86 Ohio App.3d 826, 834, 621 N.E.2d 1294 (2d Dist.1993).

**{¶18}** While procedural unconscionability focuses on the process, substantive unconscionability focuses on the terms of the contract:

"Substantive unconscionability pertains to the contract itself, without any consideration of the individual contracting parties, and requires a determination of whether the contract terms are commercially reasonable in the context of the transaction involved." *Wallace v. Ganley Auto Group*, 8th Dist. Cuyahoga No. 95081, 2011-Ohio-2909, ¶ 21.

*Vasil* at ¶ 17. Courts also recognize that, in demonstrating unconscionability, "'the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required.' 1 E. Allan Farnsworth, *Farnsworth on Contracts*, Section 4.28 at 585 (3d Ed.2004)." *Devito*, 2015-Ohio-3336, 37 N.E.3d 194, ¶ 20 (8th Dist.).

**{¶19}** Blossom advances four propositions in support of its argument that the Clause is not unconscionable: (1) the loser-pays provision is not mandatory; (2) the contractual statute of limitations is not unconscionable; (3) the Clause contains enough details to be enforceable; and (4) the jury waiver need not be express.

## A. Procedural Unconscionability

**{¶20}** Conte argued below that he was unable to understand the terms of the agreement so that there was no meeting of the minds, and that the relative bargaining power between the parties resulted in no meaningful choice on Conte's part. *Taylor Bldg.,* 117 Ohio St.3d 352, 2008-Ohio-938, 884 N.E.2d 12, at 361. Conte avers in the affidavit opposing the motion to stay, that he: (1) met with Kucia at 6:30 a.m., prior to leaving for work; (2) had no discussion with Kucia about the contract provisions prior to signing; (3) had no prior experience with residential construction contracts or knowledge

of construction regulations; and (4) did not understand what arbitration was, and that he was waiving a jury trial should problems develop.

**{¶21}** The Contract encompasses substantial structural modifications to Conte's home for the sum of $175,658.00, subject to change order adjustments. Conte knew that a large sum of money was at stake. Conte was not required to meet with Kucia as he hurried to leave for work at 6:30 a.m., and rush through execution. The record does not support that Conte was in a take it or leave it situation, or that Blossom was the only provider of residential construction services, so that Conte had no meaningful choice. *Taylor Bldg.* at ¶ 33; *Lake Ridge Academy v. Carney*, 66 Ohio St.3d 376, 383, 613 N.E.2d 183 (1993).

**{¶22}** Conte initialed each page of the Contract. There is no declaration in Conte's affidavit that Blossom denied requests to make changes to the Contract, refused to address questions regarding the provisions, or somehow denied Conte the opportunity to seek third-party advice. *Williams* at 473, 700 N.E.2d 859 (1998). *Hedeen,* 2014-Ohio-4200, 19 N.E.3d 957, ¶ 36.

**{¶23}** Conte's averment that he did not read, or did not understand, certain provisions of the Contract is not sufficient to demonstrate unconscionability.

> The Ohio Supreme Court in *ABM Farms, Inc. v. Woods,* 81 Ohio St.3d 498, 692 N.E.2d 574 (1998), rejected the argument that if one fails to read what they have signed, then they are not held to the agreement. In that case, the plaintiff signed an Account Acceptance Form that stated she had received, read and understood the terms of the Account Agreement booklet describing the terms of the arbitration agreement. The plaintiff later claimed she was unaware of the existence of the arbitration agreement. The court held there was no misrepresentation of facts, only a failure of the

defendant to inform the plaintiff of the content of the contract, which it was under no obligation to do. The court explained: "a person of ordinary mind cannot be heard to say that he was misled into signing a paper which was different from what he intended, when he could have known the truth by merely looking when he signed." *Id.* at 503.

*Butcher v. Bally Total Fitness Corp.*, 8th Dist. Cuyahoga No. 81593, 2003-Ohio-1734, ¶ 32. Conte also failed to establish that he was unable to understand the terms of the agreement, or that he was pressured to sign it. *Vanyo v. Clear Channel Worldwide*, 156 Ohio App.3d 706, 2004-Ohio-1793, 808 N.E.2d 482, ¶ 19 (8th Dist.).

**B.    Substantive Unconscionability**

**1.    Jury Trial Waiver**

**{¶24}**    "The waiver of the right to a jury trial is a necessary consequence of agreeing to arbitration and is not unconscionable." *Taylor Bldg.*, 117 Ohio St.3d 352, 2008-Ohio-938, 884 N.E.2d 12, ¶ 55. We repeat that Conte was not required to execute the agreement if he did not understand it, and also observe that the waiver is mutual to the parties. *Butcher* at ¶ 32; *Hayes,* 122 Ohio St.3d 63, 2009-Ohio-2054, 908 N.E.2d 408, ¶ 43.

**{¶25}**    As to Conte's assertion that the waiver provision was not express or easily discernible, "[t]he loss of the right to a jury trial is a necessary and fairly obvious consequence of an agreement to arbitrate." *Pierson v. Dean, Witter, Reynolds*, 742 F.2d 334, 339 (7th Cir.1984); *Taylor Bldg*. at ¶ 55.

**2.    Loser Pays**

**{¶26}** Blossom also argues that the loser-pays provision is not unconscionable, a position rejected by Conte who points to this court's holding in *Devito v. Autos Direct Online, Inc.,* 2015-Ohio-3336, 37 N.E.3d 194 (8th Dist.), where we rejected a loser-pays provision. The Contract provides:

> Each party shall bear its own costs and expenses and an equal share of the arbitrator's and administrative fees of arbitration. Provided, however, that under Article XV, the arbitrator *may* award attorneys fees to the prevailing party.

(Emphasis added.) Contract Article XX(c). Distilled, Blossom offers that only mandatory loser-pays provisions are unconscionable. *See*, *e.g., Devito*, as well as this court's decision in *Hedeen,* 2014-Ohio-4200, 19 N.E.3d 957. We disagree.

**{¶27}** As in *Devito*, Conte's claims include violations of the OCSPA, R.C. Chapter 1345 and, as Blossom asserts, the provisions of the Home Construction Service Suppliers Act ("HCSSA"), R.C. Chapter 4722 are also applicable in this case. Both acts include provisions for an award of attorney fees under specific circumstances, including the award of attorney fees to a defendant in the event of bad faith, groundless filings on the part of the consumer or homeowner (R.C. 4722.08(D)(1); 1345.09(F)).

**{¶28}** Whether mandatory or optional, the broad language of the Contract regarding fees results in a chilling effect on an aggrieved consumer. As we did in *Devito,* we refer to the AAA rules referenced in the Contract for further guidance.

**{¶29}** The Contract provides that the Construction Industry Arbitration Rules and Mediation Procedures ("Rules") of the American Arbitration Association ("AAA") govern arbitration between the parties. There is no explanation of what the Rules

encompass. There is no website referenced in the Contract or offered by Blossom to provide a set of the Rules upon request.

{¶30} We first observe that the Rules in effect at the time the arbitration demand filing requirements are met is the version that will govern the arbitration, and not the version of the Rules in effect at the time an agreement is executed. The Rules, geared toward construction industry disputes,[1] provide four procedural track options:

> [T]he Regular Track Procedures (Section R), the Procedures for the Resolution of Disputes through Document Submission (Section D), the Fast Track Procedures (Section F) and the Procedures for Large, Complex Construction Disputes (Section L). The Regular Track Procedures are applied to the administration of all arbitration cases, unless they conflict with any portion of Section D, Section F, or Section L whenever these Sections apply. In the event of a conflict, the Fast Track Procedures, Procedures for the Resolution of Disputes through Document Submission, or the Procedures for Large, Complex Construction Disputes apply.

{¶31} Conte's claim is not eligible for the simpler Fast Track option, as the amount prayed for in this case exceeds $100,000. Instead, the Rules provide that the Large, Complex Construction Disputes Rules will apply, unless otherwise agreed upon by the parties. The Contract is silent on this issue. The Contract provides for a single arbitrator, while the Rules provide for a highly qualified panel "compensated at their customary rates," leaving open the question of how many arbitrators will be required and at what cost.

---

[1] AAA construction rules also reference arbitration and mediation for home construction to allow for a simpler, faster, and cost effective procedure. However, those are not the rules specified in the Contract.

{¶32} The question of locale for proceedings depends on the agreement of the parties according to the Rules. If the location is not specified, the arbitrator will select a city "nearest to the site of the project in dispute, as determined by the AAA, subject to the power of the arbitrator to finally determine the locale within 14 calendar days after the date of the preliminary hearing."

{¶33} Administrative fees governing the proceedings are not set forth in the Rules, but are contained in a separate fee schedule. The schedule includes filing fees ranging from $750 to $1500 depending on the sum involved, additional fees to add parties and certain services, and hearing room rental fees. The schedule does not include arbitrator compensation or expenses, court reporting or post-award charges incurred by the parties in enforcing the award. The Rules also provide for "[a]n award of attorneys fees if all parties have requested such an award or it is authorized by law or their arbitration agreement."

{¶34} The unconscionability and public policy concerns that this court expressed in *Devito* and *Hedeen* are not assuaged by making the award optional yet without condition. The loser-pays provision effectively nullifies the OCSPA and HCSSA provisions that allow the imposition of such fees only where a consumer acts in bad faith and files a groundless complaint. (R.C. 4722.08(D)(1); 1345.09(F)).

> Therefore, we agree with Hedeen that the loser-pays provision chills consumers from pursing their statutory claims through arbitration.

> * * *

> [W]e find that the arbitration clause is unenforceable because it vanquishes the remedial purpose of a statute by imposing arbitration costs and preventing actions from being brought by consumers. *See Eagle [v. Fred Martin Motor Co.]*, 157 Ohio App.3d 150, 2004-Ohio-829, 809 N.E.2d 1161, at ¶ 68 [9th Dist.]. Such a contract clause is injurious to the interests of the State, is against public policy, and accordingly cannot, and will not, be enforced. *Id.* at ¶ 74, citing *King [v. King]*, 63 Ohio St. 363, 372, 59 N.E. 111 [1900].

*Hedeen,* 2014-Ohio-4200, 19 N.E.3d 957, ¶ 48-49.

**{¶35}** We find that the loser-pays provision is unconscionable and against public policy. "[I]t is hereby excised from the arbitration contract." *Devito,* 2015-Ohio-3336, 37 N.E.3d 194, ¶ 44.

### 3. Statute of Limitations

**{¶36}** Following the two sentence notification, in lower case letters and regular font, that the Contract is subject to binding arbitration, Article XX proclaims that, "ANY CLAIM NOT SUBMITTED TO ARBITRATION BY FILING A DEMAND FOR ARBITRATION WITHIN ONE (1) YEAR AFTER THE CLAIM ACCRUES SHALL BE BARRED." Similar to the jury trial waiver, which is not explicitly set forth in the Contract, there is no reference to the impact of the limitation or that it applies regardless of any Ohio law governing limitation of actions.

**{¶37}** Conte posits that the limitation is not reasonable in this case due to the nature of the work; however, Conte cites no authority in support of this position.[2]

---

[2] "An appellate court may disregard an assignment of error pursuant to App.R. 12(A)(2) if an appellant fails to cite to any legal authority in support of an argument as required by App.R. 16(A)(7)." *State v. Moore*, 8th Dist. Cuyahoga No. 85828, 2006-Ohio-277, ¶ 31. However, in the interest of justice, we elect to address this issue.

Blossom counters that the limitation applies to the parties equally, and the language provides for a one-year limitation after "accrual" of the claim. Conte has failed to respond to Blossom's argument with evidence of how and why the one-year limitation is unconscionable and against public policy, or how the provision has prevented the pursuit of his legal rights and remedies.

{¶38} The Ohio Supreme Court has recognized that parties may agree to a limitation on the time within which an action may be initiated where the applicable statute of limitations provides a longer period. However, such a contractual limitations period is valid only if the time provision is unambiguous, is for a reasonable period, and is not in violation of public policy. *See Kraly v. Vannewkirk,* 69 Ohio St.3d 627, 632, 635 N.E.2d 323 (1994); *Miller v. Progressive Cas. Ins. Co.*, 69 Ohio St.3d 619, 624, 635 N.E.2d 317 (1994).

> Public policy is the community common sense and common conscience, extended and applied throughout the state to matters of public morals, health, safety, welfare, and the like. Again, public policy is that principle of law which holds that no one can lawfully do that which has a tendency to be injurious to the public or against the public good. Accordingly, contracts which bring about results which the law seeks to prevent are unenforceable as against public policy. Moreover, actual injury is never required to be shown; it is the tendency to the prejudice of the public's good which vitiates contractual relations.

(Footnotes omitted.) *Devito*, 2015-Ohio-3336, 37 N.E.3d 194, ¶ 37 (8th Dist.), quoting 17 Ohio Jurisprudence 3d, Contracts, Section 94 at 528 (1980).

{¶39} The majority of cases in Ohio on this issue involve automobile insurance contracts; however, this case involves a residential construction agreement. What is

reasonable in the context of an automobile insurance policy may not be reasonable in a construction case, where defects may be latent.

**{¶40}** As observed by the New York Court of Appeals in analyzing the reasonableness of a reduced statute of limitations period, there is no hard-line rule as to when the period of time within which an action must be brought is fair and reasonable. It turns on the circumstances of each particular case. "A 'limitation period' that expires before suit can be brought is not really a limitation period at all, but simply a nullification of the claim." *Executive Plaza, LLC v. Peerless Ins. Co.*, 22 N.Y.3d 511, 5 N.E.3d 989, ¶ 4 (2014), citing *Continental Leather Co. v. Liverpool, Brazil & River Plate Steam Navigation Co.*, 259 N.Y. 621, 622-623, 182 N.E. 207 (1932).

**{¶41}** As we have determined that the Contract is enforceable in this case, it is within the purview of the arbitrator to determine the reasonableness of the reduced statute of limitations, and to determine whether there is any tension between the limitation and Ohio law. *See SW Ohio Regional Transit Auth. v. Amalgamated Transit Union, Local 627*, 91 Ohio St.3d 108, 110, 2001-Ohio-294, 742 N.E.2d 630; *Bechtel Do Brasil Construções Ltda. v. UEG AraucÁria Ltda.*, 638 F.3d 150, 154-155 (2d Cir.2011) (arbitrator shall determine issues involving limitation of actions based on language of agreement, and address whether such provision conflicts with New York law).

### 4. Detailed Enough to Enforce

**{¶42}** The final component of Blossom's appeal is that the Contract is detailed enough to enforce. We agree.

**{¶43}** This court has upheld in numerous cases the incorporation by reference of the governing arbitral association and rules:

> [I]t is commonplace for arbitration agreements to incorporate the AAA rules. The mere fact that an agreement incorporates the rules does not make it invalid. Rather, the complaining party must be able to specifically cite to, and demonstrate how, a specific provision in the AAA rules renders the Agreement invalid.

*Melia v. OfficeMax N. Am., Inc.,* 8th Dist. Cuyahoga No. 87249, 2006-Ohio-4765, ¶ 36. Notwithstanding this court's decision to excise the loser-pays provision in this case, Conte has failed to demonstrate how the provisions of the AAA Rules render the Contract invalid. *Id.*

## V. CONCLUSION

**{¶44}** We find that the trial court erred in denying Blossom's motion to stay pending arbitration in toto. Specifically, we find that the arbitration agreement is enforceable with the excision of the loser-pays provision.

**{¶45}** This case is reversed and remanded for further proceedings consistent with the opinion.

It is ordered that the appellant recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


_____
ANITA LASTER MAYS, JUDGE

MELODY J. STEWART, P.J., and
SEAN C. GALLAGHER, J., CONCUR